M. E. FOWLER & CO. V. BARRETT QUALL, *et al.*

REAL-ESTATE AGENT, *When Not Liable for Purchase-Money Partly Paid.*
A real-estate agent who receives a part payment of purchase-money
on a sale conditioned that the offer be accepted by the owner on the
terms and conditions specified, or the money be returned, is not
liable in an action by the purchaser for the money, if the offer was
accepted by the owner, and if at the time of acceptance the owner and
purchaser by mutual agreement vary the terms and conditions upon
which the agent sold.

### *Error from Shawnee District Court.*

M. E. FOWLER & Co., plaintiffs in error, were real-estate
agents in the city of Topeka during the year 1884, and as
such had on their books for sale as agents for the owner, Squire
Burns, lots 425 and 427, (with small house on each lot,) Clay
street, North Topeka. On the 20th of March, 1884, the de-
fendants in error purchased the lots from the plaintiffs in
error, who signed and delivered to the defendants in error the
following written instrument:

"Received, Topeka, Kansas, March 20, 1884, from Barrett
Quall and William Garrett, one hundred and forty dollars, as
part payment on houses and lots numbered 427 and 425, Clay
street, North Topeka; deferred payments to be as follows:
$10 within thirty days; to assume mortgage of $100 due in
October, 1884; balance, $300, to be paid on or before two
years from date—the whole contract price $550. It is under-
stood that the owner of the property (Burns) is to furnish
abstract of title, give warranty deed, furnish sufficient war-
ranty of clear title, etc. And if this offer in the aforesaid
manner is not accepted, then the $140 is to be returned to the
said Barrett Quall and William Garrett.

M. E. FOWLER & Co."

On the 21st day of March, 1884, Squire Burns, the vendor,
and the defendants in error, made, executed and delivered to
an attorney to hold for the benefit of all, the following agree-
ment:

" This agreement, made this 21st day of March, 1884, by

and between Squire Burns and Eliza A. Burns his wife, parties of the first part, of Topeka, Shawnee county, in the state of Kansas, and William Garrett and Barrett Quall, parties of the second part, of Christian county, in the state of Kentucky,

"Witnesseth: That said parties of the first part, for the consideration hereinafter mentioned, covenant and agree to sell and convey unto said parties of the second part, their heirs and assigns, all the following-described real estate, situated in the county of Shawnee and state of Kansas, to wit: To said Barrett Quall lot numbered 425, and to said William Garrett lot numbered 427, both of said lots being and situate on Clay street, in Middaugh's subdivision and addition to the city of Topeka, Shawnee county, Kansas. In consideration of which, said parties of the second part covenant and agree to pay unto the said parties of the first part, for the same, the sum of seven hundred dollars, as follows: Two hundred and fifty dollars paid cash in hand, the receipt whereof is hereby acknowledged; forty dollars deposited with M. E. Fowler & Co., to be paid by him when deeds are made as herein specified; one hundred and ten dollars to be paid within thirty days from this date — upon payment of which the deeds hereinafter specified shall be made, when the parties of the second part agree to give their separate promissory notes for the sum of $150 each, due in one and two years, secured by mortgage on said property.

"And said parties of the first part, on receiving said sum and sums of money at the time and in the manner aforementioned, shall at their own expense execute and deliver to said parties of the second part an indefeasible estate of inheritance, in fee simple, of, and in all and singular the above-described premises, with the appurtenances, and warrant that the same are free, clear, discharged and unincumbered of and from all former and other grants, titles, charges, estates, judgments, taxes, assessments and incumbrances, of whatever nature or kind soever.

"It is further agreed between the parties to these presents, that the parties of the first part are to retain possession of said premises until the 21st day of April, 1884, when the same shall be delivered up to said parties of the second part, upon their compliance with the agreements hereinbefore contained; that said parties of the second part shall pay all taxes or assessments becoming chargeable to or upon said premises after delivery of possession thereof as aforesaid; and that if default be made in fulfilling this agreement, or any part

thereof, by or on behalf of said parties of the second part, this agreement shall, at the option of said parties of the first part, be forfeited and determined, and said parties of the second part shall forfeit all payments made by them on the same, and such payments shall be retained by said parties of the first part in full satisfaction and in liquidation of all damages by them sustained, and they shall have the right to reënter and take possession of said premises.

"And it is further mutually agreed, that all covenants and agreements herein contained shall extend to and bind the respective heirs, executors, administrators and assigns of said parties.

"In witness whereof, the said parties have hereunto set their hands, the day and year first above written.

SQUIRE BURNS,<br>
WM. GARRETT,<br>
BARRETT X QUALL.<br>
<sup>His</sup> <sup>mark.</sup>

Executed in presence of
   M. E. FOWLER.
   G. A. HURON."

Action brought before a justice of the peace, by *Quall* and *Garrett* against *Fowler & Co.*, to recover the $140 paid as aforesaid. Judgment for plaintiffs. The defendants appealed to the district court. Trial at the April Term, 1885, when the court instructed the jury to bring in a verdict for the plaintiffs for the full amount claimed; verdict and judgment accordingly; new trial denied. The defendants bring the case here.

*Welch, Lawrence & Welch*, for plaintiffs in error.

*G. W. Carey*, and *White & Gunn*, for defendants in error; *E. E. Chesney*, of counsel.

Opinion by SIMPSON, C.: The first question in this case, and it may be a decisive one, is, how are these contracts to be regarded? Is that of the 20th of March, made by the plaintiffs in error, as the agents of Burns, merged in that of the 21st, made by Burns, the owner? Or does the contract of the 21st supersede that of the 20th? Or are they to be considered as separate and independent agreements, each creating

mutual rights and obligations without reference to the other? Or are they to be taken and construed together as one, each to be read in the reflected light of the other? We are inclined to adopt the theory that the contract of the 20th, a mere memorandum of the terms and conditions of a sale, by the agents of the owner, to be accepted by the owner, is superseded by that of the 21st, made by the owner himself with the defendants in error.

A fair construction of the first contract, made by the agents on the 20th, is, that the defendants in error offer to buy the property on the terms specified, and if the offer is accepted by Burns, the owner, a contract for the sale and conveyance of the property is made; but if the offer is not accepted, then the $140 as part payment is to be returned to the defendants in error. With this construction of this agreement, it is perfectly evident that no obligation to return the money would rest on the agents unless Burns, the owner, would refuse to accept the offer; and the converse of this proposition is, that if Burns did accept their offer to buy, then the money paid was to be retained. On the next day the parties came together at the office of plaintiffs in error, and executed the contract for sale and conveyance of the 21st. It may be that in most if not all of its terms and conditions it departs from the one executed on the previous day; but if it does, it is the mutual act of the parties thereto, and they always have the right to change the conditions of their contract. It is nevertheless for all purposes an acceptance by Burns of the offer of the defendants in error to buy the houses and lots, and is a compliance with the terms of the contract so far as the payment and retention of the one hundred and forty dollars is concerned. To be a little more explicit, and to confine the last remark within the limits intended for its operation: It is a justification of the payment of that sum by Fowler & Co. to Burns. Of course we are not to be understood as expressing any opinion as to what weight any or all of these things may or might have in an action by the defendants in error against Burns. Nor do we stop to inquire, because it is immaterial in this view at whose request or for what purpose

the contract of the 21st was varied from the first one in several particulars. We must take these contracts as the parties made them, and construe them by their words and the acts and situation of the various parties in relation to their subject-matter. This much may be very confidently said, that the contract of the 21st was the immediate and direct result of that of the 20th, made by the same parties about the same subject-matter, the only variance being about the time and amount of payments, and forever disposed of the first and substituted the second as being the last and best expression of the intention of the parties. It is by this new agreement that the rights, duties and obligations of the parties to this action must be measured and determined.

Whatever remedy the defendants in error may have against Burns, it must be conceded that on the state of facts shown by the record, they cannot maintain this action against the plaintiffs in error for the recovery of the $140 received by them as a part payment on the sale of the lots. One very good reason for this is, because the condition upon which it was paid to them as agents was, that their principal should accept the offer. This, as we have already stated, was done by the subsequent agreement. A contract of purchase and sale was entered into and signed by all the parties. There is another very good reason disclosed by the record why this action should not be maintained against Fowler & Co. On the trial of this cause in the district court, Fowler swore, and it was undisputed, that this sum of one hundred and forty dollars secured by the plaintiffs in error, from the defendants in error, was paid over to Burns by him in the presence of and by the consent of the defendants in error; thus most conclusively showing that at that time they regarded the subsequent contract as an acceptance of their offer.

It is recommended that the judgment be reversed, and the cause remanded to the district court, with instructions to grant a new trial.

By the Court: It is so ordered.

All the Justices concurring.