J. H. WHETSTONE et al. v. CRANE BROS. MANUFAC-
TURING COMPANY.

1. PETITION — Cause of Action Stated.   The petition in this case
examined, and held, that said petition states facts sufficient to
constitute a cause of action against the defendants, and states
but one cause of action.

2. PROMOTERS OF CORPORATION — Individual Liability for Goods
Sold.   Where certain persons procure a charter, and are named
therein as the directors of a corporation for the first year, and, as

such directors, elect themselves as officers of such organization, but no *bona fide* subscription of stock is ever made, and no arrangements made for the payment of debts or liabilities which may be incurred by such organization, the organization cannot be said to have such a corporate existence as would authorize its directors to incur any liability in the name of the corporation; and the persons so engaged in the enterprise are liable personally as promoters thereof for a debt incurred for material purchased by one elected by them as superintendent and general manager, and needed in carrying on the business for which such organization was formed.

MEMORANDUM.— Error from Miami district court; JOHN T. BURRIS, judge. Action brought by the Crane Bros. Manufacturing Company against J. H. Whetstone and others to recover for certain merchandise. Judgment for the plaintiff company. The defendants, J. H. Whetstone and two others, bring the case here. Affirmed. Opinion filed August 6, 1895.

The statement of the case, as made by COLE, J., is as follows:

This was an action brought in the district court of Miami county by Crane Bros. Manufacturing Company, as plaintiff, against J. H. Whetstone, J. J. Whetstone, W. M. Mills, W. G. Bryson, J. P. Harris and W. T. Pickerell, upon an account for merchandise sold to the Kansas Mineral Development Company. The petition charges that the defendants entered into an agreement to form a corporation known as the "Kansas Mineral Development Company," but the said corporation was never fully formed; that a charter was obtained and an agreement made by the defendants to subscribe to the capital stock of said corporation, and that J. H. Whetstone was elected president, J. J. Whetstone, secretary, W. T. Pickerell, treasurer, J. P. Harris, vice-president, and W. M. Mills, superintendent and general manager thereof.

The petition further alleges that no book for the subscription of capital stock was ever opened, and no *bona fide* subscription of stock ever made, but that the defendant, W. M. Mills, acting for himself and the other defendants, purchased the goods in question by representations made to plaintiff below to the effect that the said corporation was solvent and responsible, and its officers and stockholders were solvent and responsible men ; and the petition further alleges that these representations were not true, in that the said corporation was never fully organized, was not solvent, and had made no arrangements for the payment of its debts ; and for these reasons asks judgment against said defendants personally as promoters of the enterprise.    There was a verdict and judgment against all the defendants except J. J. Whetstone. The defendants, J. H. Whetstone, W. T. Pickerell and J. P. Harris, brings the case here for review.

*Mechem & Smart*, for plaintiffs in error.

*Sperry Baker*, for defendant in error.

The opinion of the court was delivered by

COLE, J. : The record in this case is quite peculiar, and presents a method for the trial of a case somewhat new to this court.   On the 15th day of April, 1889, this cause being at issue, the defendants failed to appear, and the plaintiff submitted its case to the court and obtained a judgment.   On the 17th of April, 1889, the defendants filed a motion for a new trial.    At the time the judgment of April 15 was rendered there was an agreement between counsel, which was afterward reduced to writing and made part of the record, that such judgment had been rendered in the cause without actual trial, and that

the issues between the parties should be fully tried at a future date, and that the judgment of April 15 should depend wholly for its validity upon the results of such trial upon the merits; that upon such trial either party should have the right to except to any action or decision adverse to him in the same manner and with the same force and effect as in any other trial. It was further agreed, that if such trial upon the merits should result adversely to the defendants, or any of them, the assessment of damages should be the amount of such judgment, with accrued interest; that the defendants, or any of them, should have the right to file a motion for a new trial, to be filed and take effect as if filed actually within three days after the rendition of the judgment aforesaid. On June 18, 1890, a trial was had before the court and a jury, resulting in a verdict for the plaintiff and against all the defendants but J. J. Whetstone. No further motions for a new trial were filed by any of the defendants, but argument was had upon the motions which had been filed on April 17, 1889, and the same were overruled, except as to the defendant, J. J. Whetstone. With the record in this condition, counsel for defendant in error claims that the plaintiffs in error cannot be heard to complain of the rulings of the court on the ground that the verdict rendered in June, 1890, was not attacked in the trial court, and if the judge committed any errors upon the trial he was never called upon to correct them. It seems to us, however, that, although the proceedings were quite peculiar, the court and all the parties treated the motions for a new trial as an attack upon all the proceedings, and, it would seem from the agreement, that such was the intention at the time of the filing of said motions. This is shown

by the fact that each of said motions attacked the verdict as well as the judgment, whereas the first trial of the cause was had by the court without a jury, and by the further fact that each of said motions was regularly taken up and passed upon without objection after the trial of the cause in June, 1890. While we cannot commend this method of practice, we feel in this case that the agreement of counsel and their subsequent action under such agreement compel us to examine into the alleged errors for which the plaintiff in error claims that a reversal of judgment should be had.

The first assignment of error is the overruling of the demurrer of the plaintiffs in error to the petition, on the ground that there were several causes of action improperly joined. We think the demurrer was properly overruled. The petition stated but one cause of action, and that was against each and all of the defendants as promoters of the corporation. It is true that the pleader alleged different acts upon the part of each of the several defendants, which acts were claimed by him as establishing the liability of said defendant in conjunction with the other defendants named. It is claimed by the plaintiffs in error that the petition, besides alleging joint liability on the part of all the defendants, seeks further to charge the defendant, J. H. Whetstone, alone upon the promise made by him to his co-defendant, Mills, but we do not so read or understand the pleadings. The petition recites the fact of such agreement, but only as one of the several facts relied upon to establish the liability of each and all of said defendants.

The second assignment of error is, that the petition did not state facts sufficient to constitute a cause of action against the defendants — this being one of the

grounds urged in the demurrer to the petition.    Under this heading, counsel for plaintiffs in error argue that while it is true that parties who are promoters in a supposed corporation are liable for the debts con- tracted by that corporation in cases where no stock is subscribed and no funds placed in the treasury for the purpose of meeting its obligations, yet this peti- tion discloses the fact that this corporation was sol- vent, and that its stock had been sold; and this, we presume, raises the most important question in this case, which is, whether a *bona fide* corporation had been fully formed when the goods in question were purchased, or whether the action of the defendants (plaintiffs in error here) were such as to leave them personally liable as promoters of the enterprise for the reason that a corporation had not been actually and legally completed.    The evidence shows that plaintiffs in error subscribed articles of incorporation of the Kansas Mineral Development Company, and obtained a charter for such company, and that, after obtaining such charter, the directors named therein met and elected J. H. Whetstone, president, J. J. Whetstone as secretary, W. T. Pickerell as treasurer, J. P. Harris as vice-president, W. M. Mills as super- intendent and general manager of said corporation; that the capital stock of said company was placed at $500,000; and that the various incorporators of said company, with the possible exception of J. P. Harris, agreed that they would subscribe for the capital stock of said company in various amounts from $25,000 to $200,000.    But the evidence further shows that no part of this agreement for the subscription of the stock was ever carried out, that no stock-book was ever opened, and no stock in fact was subscribed; and the petition alleged all these facts.

The evidence further shows that the plaintiff in error, Mills, was given entire charge of the management of the affairs of the plaintiffs in error, in connection with the business transacted under the charter which had been procured. The general plan, as shown by the evidence, was that the Kansas Mineral Development Company should obtain control of the stock of a corporation known as the Pennsylvania Gas & Mining Company, and thereby obtain control of the tools and leases which were owned and held by the last-named company; and, without waiting to perfect arrangements, Mills, with the consent of all the plaintiffs in error, proceeded to prospect upon the grounds covered by the leases of the Pennsylvania Gas & Mining Company, using the tools of said company. In the carrying out of these developments, it became necessary to purchase a certain amount of piping and similar material, and this material was obtained by Mills from the defendant in error upon representations as to the financial standing of the company and the persons interested therein. The evidence shows clearly that no provision had been made for the payment of the debts of the Kansas Mineral Development Company, except as the results of the work itself might pay them. The promoters of this enterprise expected to gain control of the leases and tools of the Pennsylvania Gas & Mining Company by the foreclosure of the chattel mortgage which had been given by the Pennsylvania Gas & Mining Company to Carter Bros., and this mortgage was obtained by the giving of the notes of Mills and Bryson, indorsed by plaintiff in error, J. H. Whetstone. In fact, the full scope of the scheme was, that the Kansas Mineral Development Company was organized for the purpose of buying out the Pennsylvania Gas & Min-

ing Company, and taking the property of the Pennsylvania Gas & Mining Company as a basis for the stock of the Kansas Mineral Development Company; and the only provision which was made for the payment of the indebtedness necessarily incurred for making the purchase and for labor and material to carry on the work, was the erection of a mountain of delusive hope as to the result of the prospecting to be done. The plaintiff in error, J. H. Whetstone, knew when the goods in question were purchased. He was present while they were still upon the cars at the point of destination. He paid the freight at the request of Mills. He was present at various times while the work was in progress under direction of Mills, and authorized Mills to procure what was necessary to carry on the work. The plaintiff in error, Pickerell, was present at nearly all the meetings of the directors, and took part therein. The plaintiff in error, Harris, subscribed to the charter, and permitted his name to be used in the general scheme, and there was sufficient evidence to support the claim that he was to receive, as compensation for the use of his name, $1,000 of the stock of said company. The plaintiff in error, Whetstone, procured letter-heads to be printed which set forth the officers of the Kansas Mineral Development Company, and these were used by both Whetstone and Mills, with the knowledge of Pickerell, in their correspondence, and were used by Mills in corresponding with the defendant in error in regard to the goods in question.

And, finally, when the promoters of this enterprise found themselves confronted with debts for material and labor which they were unable to pay, a meeting of the directors was called, and a motion carried that of the 5,000 shares of capital stock, $4,855\frac{5}{12}$ were to

be issued to W. M. Mills, who, the evidence shows, was insolvent, a small part of the other shares to parties who were in no way connected with the enterprise, and who, so far as the evidence shows, never agreed to. or had any knowledge of the issuance of such shares, and one share each to Bryson, Pickerell, Harris, J. H. Whetstone and J. J. Whetstone; but none of such shares were actually issued or delivered to the parties named, and all of them remained in the stock-book and under the charge and control of J. H. Whetstone for the purpose, as the evidence discloses, of securing him for advances made in carrying on the work. It surely cannot be held that this was a *bona fide* subscription of stock. In *Coal Co. v. Settle*, 54 Kas. 424, it is held that—

"While the existence of a corporation dates from the time of filing its charter, it cannot be regarded as a complete organization, authorized to transact business, when the subscription-books of the corporation have not yet been opened and no stock has been subscribed."

And this, we take it, means a *bona fide* subscription. There can be but one conclusion from the evidence in this case, and that is, however honest in intention plaintiffs in error may have been, they entered into a speculation, trusting that the profits would be large enough to repay them for the chances which they took. They advertised themselves to the business world and to the defendant in error as being the responsible parties in the venture, for certainly the complete authority which was given to Mills made his statements in the transaction of the business in which they were engaged the statements of each of them, and the plaintiffs in error ought not now to be allowed to escape liability as individuals upon

an indebtedness created under such circumstances. In his work on Private Corporations, Mr. Beach makes a distinction between a case where the plea of *nul tiel corporation* is set up in a suit between a corporation and a stockholder to defeat an alleged liability and the case of a suit against individuals who claim exemption from individual liability on the ground of having become a corporation under the provisions of a general statute; and he there lays down this rule:

"In the latter case a stricter measure of compliance with statutory provisions will be required than in the former. It is immaterial that the persons attempting incorporation have acted in good faith, and have actually carried on business under their supposed authority to act as a body corporate." (Beach, Priv. Corp., § 16; and see, also, *Kaiser v. Savings Bank*, 56 Iowa, 104.)

The plaintiffs in error also complain of the ruling of the court permitting the deposition of J. H. Whetstone, with its exhibits, to be read as a written statement of a party to the suit. The statement of a party to an action is always competent to be given in evidence against him, and it was for this purpose only that the deposition was offered and admitted. The exhibits were letters written by J. H. Whetstone, and were sufficiently identified. The same objection was made to the introduction of the deposition of J. J. Whetstone, and the same reasoning applies thereto. It is true that, as shown by the depositions, the signatures of J. H. Whetstone and J. J. Whetstone did not appear upon the depositions, but the record shows that this omission was by agreement of counsel, and that the depositions were admitted to be what they purported to be.

Further objection was made to several of the instructions given by the court to the jury. We do not

deem it necessary to give these instructions in full, but an examination of them convinces us that they were properly given. Plaintiffs in error complain of the refusal of the court to give the eighth instruction requested by them. We think the instruction was properly refused.

Perceiving no error in this case, the judgment is affirmed.

All the Judges concurring.