No. 31,606

HARRY C. TRENTMAN, *Appellee,* v. O. A. KEACH, *Appellant.*

(37 P. 2d 45)

Opinion filed November 3, 1934.

*E. L. Foulke* and *Roy H. Wasson,* both of Wichita, for the appellant.

*C. A. Matson, I. H. Stearns* and *E. P. Villepigue,* all of Wichita, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: The defendant in this case appeals from the order of the trial court overruling his demurrer to the petition of the plaintiff.

The action is for an accounting and is based upon two contracts made between the plaintiff and the Merriman heirs concerning the sale of the land belonging to such heirs upon a specified commission. Both contracts name the defendant as the agent of the Merriman heirs. The plaintiff alleges that the terms of the contracts in making the defendant the agent of the heirs of Merriman make such agent a trustee for the Merriman heirs and also for the plaintiff.

The original contract, made February 10, 1912, between the plaintiff and these heirs, authorized the plaintiff to block and plat their land in Wichita and apportion a price to each lot and block subject to their approval, or that of their agent, so that the total would equal $150,000, and then to sell the same on certain installment payments which, other than the first, were to be made to their agent or a bank selected by their agent, and plaintiff would be entitled to receive as his commission all that any of the property brought above the approved price, which was to be paid him at the rate of a certain percentage of the installment payments made by the purchasers, and when the whole amount of $150,000 was paid to the heirs the remainder of the land was to become the property of the plaintiff. At the end of the three-year period of the contract

the same parties entered into a subsequent contract, very similar to the first, extending and limiting the period of the new contract to three additional years, requiring the plaintiff to advertise the property and press the sale of it during that time and reducing the percentage of plaintiff's share of the original and installment payments.

The only mention of the name of the defendant in these contracts is in the concluding paragraph of each contract, as follows:

"The said parties of the first part do by the terms of this contract appoint O. A. Keach as their agent, and it is understood that where this contract provides that an agent may act for said parties of the first part, except as otherwise stated, said agent shall be and is O. A. Keach until further notice shall be given to the said party of the second part.

"Where this contract provides that an agent may act for said parties of the first part, it is understood and agreed that, except as otherwise stated, said agent shall be and is O. A. Keach until notice to the contrary shall be given to said second party."

These contracts are attached to the petition as exhibits. The plaintiff in his petition alleges he has fully performed all the duties devolving upon him under the terms of these contracts, and that he does not know and is unable to allege the amount of money collected by the defendants as rents, profits, interest and installment payments from the sale of the real estate under these contracts, and that the defendant has failed and refused to account to him for his share thereof as provided in these contracts.

Appellee correctly argues that on a hearing of a demurrer to the petition it is entitled to a liberal construction, and he urges that by inference the defendant was trustee for the plaintiff, and that it is to be presumed that the defendant is the one to distribute the collected proceeds of the sales made by the plaintiff. Because these features of presumption and inference are all important in the determination of the sufficiency of the petition in stating a cause of action against the defendant, it seems proper to use the exact language of appellee in his brief in reference thereto, which is as follows:

"In order to determine the true intent of the parties, the contract must be read as a whole, he having received all the money, although no definite statement of distribution is contained in the contract, it is to be presumed that he is the one to distribute same, and this is what actually took place for a number of years."

"It will be noted from the above that the defendant was the party with whom the plaintiff was to act as to practically all matters involved in the

contract, and by inference, if not expressly, he was made the trustee for the plaintiff as to all money he received."

We have, then, both from a careful examination of the contracts and these frank admissions, the conclusion that the contracts nowhere expressly make the defendant the agent or trustee of the plaintiff, and that there is no definite statement of distribution contained in either of the contracts. Can these essential elements of the cause of action be presumed or inferred? The trial court evidently thought they could be thus supplied. Plaintiff's counsel urge that defendant is not in a position to take advantage of these alleged defects, because he did not file a motion to make the petition more definite and certain before filing his demurrer. It is not the petition that needs to be made more definite and certain, because it already definitely and expressly alleges that the defendant was acting under these contracts as trustee for the plaintiff, and that he, as trustee, has failed to account to the plaintiff for his share of the installments. We do not have to apply any rule of presumption or inference to the petition itself. It is the contracts which must be here construed, because the petition makes them a part thereof, and the plaintiff's rights to an accounting are necessarily based upon the terms of the contracts. Unless these contracts by their terms impose a duty upon the defendant, which he owed to the plaintiff, his sole and only obligation as agent would be to his principals, the Merriman heirs.

In the case of *McCubbin v. Graham,* 4 Kan. 397, where a duly authorized real-estate agent sold land of his principal and receipted for the advance payment, disclosing the name of his principal, it was held in an action against him for the advance payment that the acts of an authorized agent are the acts of the principal, and an agent receiving money or property for his principal is liable to his principal for the same. Other parts of this decision relate to the fact that there had been litigation prior to this action between the purchaser and the landowner, but the principle of law laid down in this case is apparently general. The same principle is upheld, but under widely different circumstances than those involved in this case, in the case of *Fowler & Co. v. Quall,* 36 Kan. 507, 13 Pac. 784.

In the case of *Simmonds v. Long,* 80 Kan. 155, 101 Pac. 1070, the rule above quoted from the Graham case was held not to be applicable, because the acts of the agent were unauthorized by the principal. The case of *Crosby v. Livingston,* 105 Kan. 418, 185 Pac.

284, was another one where the agent exceeded his authority and was held liable, but the court in its opinion, instead of overruling the decision in the Graham case said, on page 421:

"Of course, if Yeast authorized the defendant to sell the ranch at the price and on the terms named by defendant, he and not the agent would be bound to answer for the money received through his agent (*McCubbin v. Graham*, 4 Kan. 397); but here the principal declined to be bound by the acts of his agent. . ."

Appellee cites *Boyer v. Day*, 132 Kan. 722, 297 Pac. 432, where the daughter, who had been appointed executrix under the will of her father, which gave the entire estate to her and her brother, subject to a life estate given to the wife, their mother, for whom the daughter acted as agent during the existence of that life estate, it was held that the daughter was handling the funds in a fiduciary capacity and as trustee for her brother and should render an accounting to him. The very fact of her accepting the position as executrix made her the trustee for the beneficiaries under the will, her brother and herself. We see no such fiduciary relationship in the case at bar. The contracts attached to the petition contain numerous duties on the part of the Merriman heirs to the plaintiff, but mention no obligation anywhere owing the plaintiff by the agent of the heirs.

In 2 C. J. under the heading of "Agency," it is said:

"In the ordinary agency the title to any property involved, and usually to all the proceeds of the agency, remains in the principal, and the agent acts in the name of the principal; in a trust the legal title is in the trustee, and he acts in his own name. Agency may in general be revoked at any time; a trust can ordinarily be terminated only by the fulfillment of the purposes of the trust." (p. 425.)

". . . where the agent is known as such to the third person and the payment to him is a proper one, in pursuance of a valid authority, and without fraud, duress, or mistake, the third person's remedy, in case he ultimately becomes entitled to a return of the money, is against the principal, and he cannot hold the agent individually liable for its return, although he has not paid it over to his principal." (p. 821.)

To conclude that the contracts attached to the plaintiff's petition, either by inference or presumption, made the defendant herein the agent and trustee of the plaintiff would require a very strained construction of them, and we entertain no doubt or hesitation in following and applying the time-honored rule announced in the Graham case which has not been shown to us to have been overruled or modified when applied to similar or pertinent facts.

Another point is raised by the appellant as to the necessity of mutual accounts between the parties before an accounting can be demanded by either one of the two parties against the other, but our conclusion that the petition based on the contracts attached thereto does not state facts sufficient to constitute a cause of action, requires a reversal of the ruling on the demurrer to the petition, and it is unnecessary to consider or determine this further claimed defect.

The order of the trial court is reversed, and the cause is remanded with directions to sustain the demurrer to the petition.