No. 46,998

State of Kansas, ex rel., Darrell D. Carlton, State Labor Commissioner, *Appellant,* v. Tom C. Triplett, William V. Crank, and Barbara Samuelson, et al.; *Appellees.*

(517 P. 2d 136)

Opinion filed December 8, 1973.

*F. Duane Roberts,* of Topeka, argued the cause and was on the brief for the appellant.

*Thomas P. Garretson,* of Martin, Pringle, Schell and Fair, of Wichita, argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

FOTH, C.: The issue in this case is whether incorporators who did no more than sign the articles of incorporation of a defectively formed Kansas corporation thereby became personally liable for obligations later incurred by others acting in the name of the purported corporation.

The purported corporation was "Air Capital International, Inc.," which commenced doing business in August, 1967, and continued until at least some time in early 1971. The obligations sought to be enforced are taxes in the form of contributions to the state employment security fund, together with penalties and interest, which accrued during the last six months of 1970, totalling some $735.81. The plaintiff below, appellant here, is the state labor commissioner. (No issue is raised concerning his right to bring the action in the name of the state rather than his own. See K. S. A. 1972 Supp. 44-717 [*b*] [1], as amended.) The "corporation" is, of course, bankrupt.

The appellees Tom C. Triplett and William V. Crank are members of a Wichita law firm retained to assist in the incorporation of Air Capital; appellee Barbara Samuelson is a secretary in their law office. The exact nature and extent of their professional employment in this matter does not appear in the record, but the three did sign articles of incorporation of Air Capital and cause them to be filed in the office of the secretary of state on August 2, 1967, together with the appropriate fees.

No copy of the articles was ever filed with the register of deeds of Segdwick county, where the corporation's registered office was to be located, although on August 9, 1967, an affidavit of paid-in capital was filed with that officer.

This action to enforce personal liability for the corporate obligation was originally brought against two individuals, not parties to this appeal, on the basis of their status as "officers" of the corporation and general managers of its business. When, by answer of one of the original defendants, the role of appellees came to light the labor commissioner sought and was granted permission to make them additional parties defendant. They, in addition to an answer, filed a motion for summary judgment accompanied by an affidavit of the appellee Triplett:

"Defendants, Tom C. Triplett, William V. Crank and Barbara Samuelson, filed Articles of Incorporation for Air Capital International, Inc., with Elwill M. Shanahan, Secretary of State of the state of Kansas, on August 1, 1967. As incorporators of the business, said defendants served in no other capacities with Air Capital International, Inc., and they transacted no business and incurred no debts in the state of Kansas under the name of Air Capital International, Inc. None of said defendants are now nor have they ever been officers or directors of said corporation."

At the hearing on the motion the parties stipulated that the facts contained in the affidavit were true. There being no factual controversy, the trial court sustained the motion and rendered judgment for the appellees. The commissioner has appealed.

The appellant advances two basic theories for the claimed liability of appellees, *viz,* that it is imposed by statute, or that it is imposed by the law of partnership. The first contention requires an examination of the former corporation code, in effect at the time the corporation was sought to be formed and when the taxes accrued, and prior to its repeal on July 1, 1972. Claimed to be particularly applicable are former sections 17-2804 through 17-2807 of the Kansas statutes annotated.

Section 17-2804 simply required the dual filing of a corporation's articles—the original with the secretary of state and a certified copy with the register of deeds. It is the second filing which was concededly omitted here.

Section 17-2805 provided that only at such time as the two filings were completed and the appropriate fees paid did a corporation come into existence. It is clear that in this case there never was a *de jure* corporation.

Section 17-2806 had two paragraphs. That labeled *A* set forth three conditions precedent to a corporation's doing business:

(1) that the corporate existence should have begun;

(2) that its capital be paid in; and

(3) that an affidavit of paid-in capital be filed with the register of deeds.

Paragraph *B* provided that if the corporation transacted business without complying with these three conditions precedent "the officers who participated therein and the directors [except those who dissented in writing] shall be severally liable for the debts or liabilities of the corporation arising therefrom."

It is apparent that this statute (like the preceding two) imposed no liability on the appellees. It is stipulated that they were neither

"officers" nor "directors" of the purported corporation. Since there *was* no corporation, they could not be actual officers or directors, and they never held themselves out to be such.

The last statute sought to be applied is 17-2807. That section provided:

"When the existence of a corporation has begun under the provisions of section 14 [17-2805] and the conditions precedent to the beginning of business under the provisions of section 15 [17-2806] have been performed, the promoters, subscribers and incorporators shall thereafter be relieved and released from all personal liability for the obligations of such corporation contracted in its name, either before or after the organization thereof, unless said corporation within thirty days from the date of filing the affidavit provided for in section 15 [17-2806] shall have disaffirmed or repudiated said obligation made on its behalf."

As we read this section it deals not with the *imposition* of liability but with the *release* from liability which otherwise might attach to the actions of "promoters, subscribers and incorporators." Thus such persons who have contracted as agents of the embryonic corporation are relieved of personal liability when their principal is fully hatched and able to assume its own obligations. The corporation might then disavow its agents' commitments, undertaken at a time when it had no legal capacity to contract or to authorize such commitments, but otherwise it alone was responsible. This is consistent with the general rule establishing the non-liability of an agent acting within his authority for a disclosed principal. Cf. 3 Am. Jur. 2d, *Agency,* § 293; *McCubbin v. Graham,* 4 Kan. 397, Syl. ¶ 4; *Trentman v. Keach,* 140 Kan. 301, 37 P. 2d 45.

The obverse side of this coin is the rule that an agent who acts beyond the authority granted by his principal, or indeed, has no principal at all, is personally liable upon a contract so made. Cf. 3 Am. Jur. 2d, *Agency,* §§ 295, 298; *Hewey v. Miller,* 132 Kan. 289, 295 Pac. 723; *Black, Sivalls & Bryson, Inc., v. Connell,* 149 Kan. 118, 86 P. 2d 545.

This statute, as we see it, codified these established rules of the law of agency as applied to a corporation in the process of formation. The statute had no application, however, to the appellees, because under the stipulated facts they contracted for no obligations in the name of the corporation. Hence we conclude that liability was imposed under none of the statutes relied on by the appellant.

There remains the question of whether appellees are liable under a common law partnership theory. In support of his contention that they are the appellant cites a number of our early cases applying such a rule where, for one reason or another, there was a failure to complete the incorporation procedure. A close examination of the cases reveals, however, that in each case the individuals held personally liable did far more than merely sign articles. In each case they either took an active part in the management of the purported corporation as officers or directors, or at the very least had an ownership interest with an expectation of sharing in the profits of the venture.

In *Walton v. Oliver*, 49 Kan. 107, 30 Pac. 172, the corporate books were never opened for receiving subscriptions, no by-laws were adopted, nor were any directors elected except those named in the articles for the first year of corporate existence, under the statutes then applicable. The directors so named were held individually liable on a corporate contract, not as incorporators or stockholders, but as directors who had participated in the making of the contract.

In *Bank v. Sheldon*, 86 Kan. 460, 121 Pac. 340, the individual held personally liable for the note of an imperfectly formed corporation was its purported president, Sheldon, who had executed the note on the corporation's behalf. The case appeared before the court again in *Bank v. Sheldon*, 96 Kan. 492, 152 Pac. 765, with respect to the liability of one Bowen, who was a mere contributor of capital to the unincorporated enterprise. Personal liability was imposed this time on a showing that Bowen *knew* Sheldon was operating in the corporate name, but nevertheless turned over to him the management of his share of the venture. It was deemed of controlling significance that the evidence showed "Bowen did participate in the corporate enterprise and in incurring the indebtedness sued on in this case." (96 Kan. at 494.)

In *Lithographing Co. v. Crist*, 98 Kan. 723, 160 Pac. 198, a number of individuals agreed to establish a bank and signed and filed articles of incorporation in which five of them were named as directors. The project was abandoned before the proposed bank opened its doors, but not before one of the individuals contracted for stationery in the bank's name. Under these circumstances the court held that "Those who in any manner participated in the common enterprise to found and establish the bank" were liable

as partners. (98 Kan. at 725.) The matter was remanded for a determination of the role each defendant had played in the enterprise.

*Weber Engine Co. v. Alter,* 120 Kan. 557, 245 Pac. 143, presented an attempt to avoid personal liability through the device of a Massachusetts trust, rather than a corporation. The device was held ineffective to accomplish the intended result. Failure to either comply with the corporation code or form a limited partnership made all who had a proprietary interest in the trust general partners, and thus individually liable for the debts of the enterprise.

*Whetstone v. Manufacturing Co.,* 1 Kan. App. 320, again presented a situation where the incorporators were directors and participated in business of the corporation transacted *without completing its organization.* Their joint interest and action made them liable as partners.

Finally, the two cases of *McLennan v. Hopkins,* 2 Kan. App. 260 and *McLennan v. Anspaugh,* 2 Kan. App. 269, each dealt with the liability of "persons who own the bank" where the bank's articles of incorporation were signed but never filed. Individual liability in both cases was predicated on the proprietary interest of the "stockholders," *i. e.,* their interest in the profit potential of the enterprise.

No cases are cited and we have found none where individuals have been held to be partners who merely signed articles of incorporation without doing more. In those cases imposing liability, if active participation was not present there was at least some stake in the enterprise on the part of those charged.

The rule that emerges from the cases is that substantial failure to comply with the requirements of the corporation code has meant that the would be incorporators were looked upon as any other individuals associated together for a common purpose, with no legal effect being ascribed to the abortive efforts to incorporate. The common law rule was applied that a pooling of capital, labor or both in a common enterprise, with an agreement to share the profits or losses, results in the creation of a partnership. Cf. 59 Am. Jur. 2d, *Partnership,* § 5; 68 C. J. S., *Partnership,* § 1. If a partnership was established, the liability of its members followed as a matter of course. (The uniform partnership act, K. S. A. 1972 Supp. 56-301, *et seq.,* became effective July 1, 1972, and has no effect on this lawsuit.)

We think the proper rule is well put in 18 Am. Jur. 2d, *Corporations*, § 134:

"The question of the liability of those who sign the articles of incorporation on contracts entered into prior to the conclusion of the incorporation or after the abandonment of the proposal to incorporate *depends principally upon the part taken by them in the management of the affairs of the company or in negotiating the contract.* One who signs the articles of incorporation and contracts debts or authorizes or ratifies contracts whereby liabilities are incurred prior to the conclusion of the corporation is liable as a partner. On the other hand, the view is taken that a signer of articles of incorporation *who takes no active part in the management of the company and does not contract debts or incur liabilities* or authorize or ratify any contracts cannot be held liable by creditors of the company, either individually or as a partner. No apparent distinction is made in respect of the liability of a signer of articles of incorporaton, whether the organization is held to be no corporation at all, or merely a de facto corporation." (Emphasis added.)

We find nothing in our law to the contrary. The appellees here took no part in the management of the company, and incurred no debts or liabilities in the company's name. They thus incurred no personal liability under the rule quoted above.

To hold that appellees here were partners in 1970 merely because they signed articles of incorporation in 1967 would be to fly in the face of the stipulated facts; they never had an agreement among themselves to pool their resources or to apportion profits and losses. Even if we assume that the legal import of their signing was to make them joint venturers at that time, despite their lack of intent, it is also clear that they withdrew from the enterprise long before the present obligation was incurred by others who succeeded to whatever interest they had. "Upon the withdrawal or retirement of a partner, the partnership relation ends, and the retiring partner sustains no further relation to the remaining or continuing partners whereby they can exercise any authority binding upon him, and whenever a retired partner is held liable for the debts of the continuing partners, the liability must be based on principles of estoppel." 60 Am. Jur. 2d, *Partnership*, § 210. There is no estoppel here, because the essential elements of a representation and reliance thereon are absent. Cf. *Place v. Place,* 207 Kan. 734, 486 P. 2d 1354; *Schott v. Linscott,* 80 Kan. 536, 103 Pac. 997. The commissioner does not and doubtless cannot claim any reliance on any representation made by the appellees.

We conclude that the court below correctly held that the appellees

were not personally liable for the debts of the purported corporation, and its judgment is therefore affirmed.

APPROVED BY THE COURT.