Frank **MACKEY**, Frank Mackey, Jr. and Stephen Mackey, d/b/a Frank Mackey & Sons, Plaintiffs-Appellees,

v.

John P. **BURKE**, Defendant-Appellant.

No. 81–1838.

United States Court of Appeals, Tenth Circuit.

Dec. 26, 1984.

Richard G. Langdon, of Herrick, Langdon & Langdon, Des Moines, Iowa (Michael

H. Maher of Veselich, Schulz, Bender, Maher & Larson, P.C., of Kansas City, Mo., was also on brief), for defendant-appellant John P. Burke.

Richard N. Roe of Lowe, Terry & Roberts, Olathe, Kan. (George A. Lowe of Lowe, Terry & Roberts, Olathe, Kan., was also on brief), for plaintiffs-appellees.

Before HOLLOWAY, Chief Judge, and SEYMOUR and TIMBERS,* Circuit Judges.

HOLLOWAY, Chief Judge.

This diversity action involves a dispute over the issuance of a stop payment order at defendants' request on a $74,200 check made out to plaintiffs. After a jury trial, the district court awarded plaintiffs judgment for $74,200 in actual damages and $50,000 in punitive damages against defendant-appellant Burke. Separate judgments were entered against defendants Rhee and United States Agro International, Inc. Defendant Burke appeals, and we affirm the award of actual damages and reverse the punitive damages award as to Burke.

## I

### Facts

At the time of the events which gave rise to the instant suit, plaintiffs were engaged in the business of dairy farming and raising and selling Holstein heifers. Defendant United States Agro International, Inc. ("U.S. Agro") was an Illinois corporation with its principal office and place of business in Chicago. Defendant Burke, a resident of Iowa, was its President and Treasurer. Defendant Rhee, an Illinois resident, was vice-president.

U.S. Agro, through its Korean representative, contracted in November 1978 to supply the National Agricultural Cooperative Federation of Seoul, Korea ("Korean Agricultural Cooperative") with 637 bred Holstein heifers. II R. 266–67; V R. 114. Two of the five shipments which U.S. Agro

made to complete its contract with the Korean Agricultural Cooperative consisted of Holstein heifers purchased from plaintiffs.

Approximately one month before the Korean contract was signed, Burke and Rhee went to plaintiffs' farm in Olathe to discuss the purchase of Holstein heifers for export to Korea. After the Korean contract was signed, Burke, Rhee, and two veterinarians representing the Korean Agricultural Cooperative went to plaintiffs' farm to select bred Holstein heifers for purchase. Plaintiff Frank Mackey Sr. ("Mackey") employed a veterinarian to examine the heifers and to prepare the required United States Origin Health Certificate ("health certificate").

In the first transaction on December 18, 1978, plaintiffs sold 111 heifers. The health certificate indicated that the consignor was U.S. Agro. II R. 257. Plaintiffs were paid $77,700 on a check drawn on the account of U.S. Agro and signed by "John Burke, Pres." *Id.* at 255. Before accepting the check, Mackey called the payor bank to check on Burke's credit. Mackey acknowledged receipt of the check on an invoice which stated that 111 head of Holstein heifers had been consigned to U.S. Agro. *Id.* at 256.

This case involves events surrounding the second transaction. On January 29, 1979, Burke, Rhee, and two veterinarians from the Korean Agricultural Cooperative again went to plaintiffs' farm to select heifers for a second shipment. When it became apparent that plaintiffs could not provide a sufficient number of heifers, Burke left plaintiffs' farm with one of the Korean veterinarians to try to acquire additional heifers elsewhere. V R. 148–49. The health certificate prepared by Mackey's veterinarian indicated that the consignor of the 106 heifers sold by plaintiffs was U.S. Agro. II R. 262. Plaintiffs were paid $74,200 on a check drawn on the account of U.S. Agro and signed by Rhee. *Id.* at 233. Before accepting the check, Mackey telephoned the payor bank to check on Rhee's

---

* The Honorable William H. Timbers of the Second Circuit sitting by designation.

credit. V R. 44–45, 71. Mackey acknowledged receipt of the check on an invoice which stated that 106 head of Holstein heifers had been consigned to U.S. Agro. *Id.* at 70.

After these heifers arrived in Seattle, Washington, a portion of them were rejected for shipment to Korea because they were sick or were calving. After discussing the problem with Mackey on the telephone, Burke stopped payment on the check and so informed Mackey. Mackey then called the Seattle Port Authority to halt the shipment. Rhee called Mackey and said that he would come to Olathe the following Monday to settle the matter if Mackey would permit the remaining heifers to be shipped to Korea. Mackey agreed. Rhee never came to Olathe. Plaintiffs were not paid for the heifers which were shipped to Korea.

Plaintiffs filed this civil action against U.S. Agro, Burke, and Rhee in the District Court of Johnson County, Kansas, in February 1979. Plaintiffs sought actual damages of $74,200 as well as $75,000 in punitive damages in connection with the stop payment order. The case was removed to the United States District Court for the District of Kansas.

The three defendants filed separate answers and U.S. Agro filed a counterclaim. I R. 10–11 (Burke's answer), 30–31 (Rhee's answer), 12–18 (U.S. Agro's answer and counterclaim). The district court overruled Rhee's motion to quash service of process and to dismiss. *Id.* at 35. Rhee and U.S. Agro failed to appear at the pretrial conference in October 1980. *Id.* at 114. Following Rhee's failure to engage in court-ordered discovery,[1] the district court entered judgment in March 1981 against Rhee on the issue of liability.

The case was tried to a jury. Rhee and U.S. Agro did not appear or participate in the trial. The jury returned a verdict in favor of plaintiffs and against Burke for $74,200 actual damages and $50,000 punitive damages. The court entered judgment against Burke individually for $74,200 actual damages and $50,000 punitive damages, as well as separate judgments against Rhee and U.S. Agro for $74,200 actual damages and $50,000 punitive damages.

On appeal, Burke contends that the district court erred in (1) failing to grant Burke's motions for a directed verdict and for judgment n.o.v. because Burke did not act in his personal capacity, but only as U.S. Agro's agent in contracting with plaintiffs to purchase the 106 heifers; (2) instructing the jury that it could disregard U.S. Agro's corporate identity if it found certain factors present; and (3) submitting the punitive damages issue to the jury. We affirm except with respect to the punitive damages award.

## II

### Burke's individual liability and agency relationship with Rhee

Burke contends that the district court erred in overruling his motions for a directed verdict and for judgment n.o.v. because there was insufficient evidence that Burke individually agreed to purchase the 106 head of heifers and that Rhee acted as Burke's agent. *See* Brief of Appellant 13–17; Reply Brief of Appellant 1–5. We disagree.

Motions for a directed verdict and for judgment n.o.v. are considered under the same standard. *E.g., Hurd v. American Hoist and Derrick Co.,* 734 F.2d 495, 498 (10th Cir.1984); 9 C. Wright & A. Miller,

---

1. Plaintiffs filed a motion to compel discovery and for imposition of sanctions following Rhee's failure to appear to give his deposition. I R. 50–52, 56–59. The magistrate held that plaintiffs could depose Rhee within thirty days of the order. *Id.* at 78–80. After Rhee failed to appear for that deposition, IV R. 1–4, plaintiffs again moved to compel discovery and to impose sanctions. I R. 83–94. The magistrate awarded plaintiffs $350 under Fed.R.Civ.P. 37(d) for Rhee's failure to appear at the deposition. *Id.* at 106–07. The district court issued an order to show cause why the magistrate's order should not be adopted. *Id.* at 108. After Rhee responded to this order, *id.* at 123–33, the court entered a default judgment against Rhee. *Id.* at 141–42.

*Federal Practice and Procedure* § 2524, at 541–42 (1971). " 'The question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury could properly find a verdict for that party.' " *Hurd,* 734 F.2d at 499 (quoting 9 C. Wright & A. Miller, *supra,* § 2524, at 543 (footnote omitted)). We must view the evidence in the light most favorable to plaintiffs as the party against whom the motions were made. *See, e.g., Downie v. Abex Corp.,* 741 F.2d, 1235, 1238 (10th Cir.1984); *Hurd,* 734 F.2d at 498; *Peterson v. Hager,* 724 F.2d 851, 853 (10th Cir.1984) (opinion on rehearing).

### A. *Disclosed Principal*

■ Burke first argues that he acted as an agent for a disclosed principal (U.S. Agro) rather than in an individual capacity when he revisited plaintiffs' farm and entered into the second transaction with plaintiffs for shipment of 106 heifers to the Korean Agricultural Cooperative. Under Kansas law, only the disclosed principal is liable on a contract executed by its agent with a third party; the agent of the disclosed principal is not liable on the contract. *See, e.g., State ex rel. Carlton v. Triplett,* 213 Kan. 381, 517 P.2d 136, 139 (1973); *Kirkpatrick v. Seneca National Bank,* 213 Kan. 61, 515 P.2d 781, 785 (1973) ("a well-established principle of agency law"); *Service Iron Foundry, Inc. v. M.A. Bell Co.,* 2 Kan.App.2d 662, 588 P.2d 463, 470 (1978) ("the general rule in Kansas"); *see also Restatement (Second) of Agency* § 320 (1957).

■ We are satisfied that the jury reasonably could have rejected Burke's argument that he acted for a disclosed principal rather than for himself[2]. Mackey testified that Burke and Rhee never told him that they were working on behalf of U.S. Agro. Mackey stated that his only knowledge concerning U.S. Agro came from the paper-

work associated with the two transactions. V R. 33–34, 43, 45–46. Mackey also took actions consistent with his belief that Burke and Rhee were acting in their individual capacities and not on behalf of U.S. Agro. For example, Mackey checked on the individual credit of Burke and Rhee before accepting the checks in the two transactions. *Id.* at 38–39, 44–45. Mackey also recorded the transactions in the company's financial records in their individual names. *Id.* at 54–55. Although Burke relies on other evidence to support his claim that he acted for a disclosed principal, we are convinced on the basis of all of the evidence, viewed in the light most favorable to plaintiffs, that the jury properly could have found Burke liable in his individual capacity.

### B. *Authority*

Burke next argues that Rhee lacked authority to bind him to any contracts or to subject him to tort liability. Under Kansas law, an agency relationship "may be, and frequently is, implied from the words and conduct of the parties and the circumstances of the particular case." *Gardner v. Rensmeyer,* 221 Kan. 23, 557 P.2d 1258, 1261 (1976) (quoting *Greep v. Bruns,* 160 Kan. 48, 159 P.2d 803, 808 (1945)). "Although what constitutes an agency is a question of law, resolution of conflicting evidence which might establish its existence is for the finder of fact." *Aetna Casualty and Surety Co. v. Hepler State Bank,* 6 Kan.App.2d 543, 630 P.2d 721, 726 (1981) (citation omitted); *see also Fredricks v. Foltz,* 225 Kan. 663, 594 P.2d 665, 671 (1979); *CIT Financial Services, Inc. v. Gott,* 5 Kan.App.2d 224, 615 P.2d 774, 779 (1980).

■ We conclude that there was sufficient evidence for a reasonable jury to find Burke liable for Rhee's actions under agency principles. Under Kansas law, an implied agency exists "if it appears from the statements and conduct of the parties and

---

2. Burke relies on evidence indicating that (1) the health certificate prepared by plaintiffs' veterinarian indicated that the consignor was U.S. Agro; (2) the two checks which plaintiff received for the heifer shipments were drawn on the account of U.S. Agro; and (3) plaintiffs' invoice for the two shipments indicated that the consignor was U.S. Agro. Brief of Appellant 15; Reply Brief of Appellant 2–3.

other relevant circumstances that the intention was to clothe the agent with such an appearance of authority that when the agency was exercised it would normally and naturally lead others to rely on the person's acts as being authorized by the principal." *Shawnee State Bank v. North Olathe Industrial Park Inc.*, 228 Kan. 231, 613 P.2d 1342, 1347 (1980); *see also Aetna Casualty and Surety Co. v. Hepler State Bank*, 630 P.2d at 726; *Highland Lumber Co. v. Knudson*, 219 Kan. 366, 548 P.2d 719, 723 (Kan.1976); *Restatement (Second) of Agency* §§ 8 (apparent authority), 49 (interpretation of apparent authority) (1957). The substance of the conversations plaintiffs had with Burke and Rhee, together with the circumstances of the transactions, reasonably could have been relied upon by the jury to find that Rhee acted as Burke's agent.[3]

### III

### Disregarding the corporate entity

At trial, Burke moved for a directed verdict on the ground that the evidence was insufficient to present a jury question on the issue of piercing the corporate veil. VI R. 231–32. On appeal, Burke argues that the district court erred in submitting this issue to the jury. Brief of Appellant 22–26; Reply Brief of Appellant 10–13. We are convinced on the basis of all of the evidence, viewed as it must be in the light most favorable to plaintiffs, that the jury properly could have decided to pierce the corporate veil of U.S. Agro in these circumstances.

The district court instructed the jury that the factors it could use in determining whether to disregard the corporate entity included:

1. undercapitalization of a one- or two-man corporation,

2. failure to observe corporate formalities,

3. nonpayment of dividends,

4. siphoning of corporate funds by the dominant stockholder,

5. nonfunctioning of other officers or directors,

---

**3.** Burke challenges the admission, over objection, of hearsay testimony by Mackey concerning statements made by Rhee to Mackey. *See* Brief of Appellant 16; *see also* V R. 47–48, 51–53. The rule is "well settled that where the agency has been established by independent evidence, the declarations of the agent are competent to show that he acted as agent and not on his individual account, and to show the nature and extent of his authority." *Moseman v. L.M. Penwell Undertaking Co.*, 151 Kan. 610, 100 P.2d 669, 674 (1940). *See also Restatement (Second) of Agency* § 284 (1957) ("In actions between the principal and third persons, evidence of a statement by an agent is admissible for or against either party for the purpose of proving that such statement was made, if the fact that the statement was made constitutes, or is relevant in the proof of, one of the ultimate facts required to be established in order to maintain a cause of action or defense."); *id.* § 285 ("Evidence of a statement by an agent concerning the existence or extent, of his authority is not admissible against the principal to prove its existence or extent, unless it appears by other evidence that the making of such statement was within the authority of the agent or, as to persons dealing with the agent, within the apparent authority or other power of the agent."); *id.* § 286 ("In an action between the principal and a third person, statements of an agent to a third person are admissible in evidence against the principal to prove the truth of facts asserted in them as though made by the principal, if the agent was authorized to make the statement or was authorized to make, on the principal's behalf, any statements concerning the subject matter.").

We are satisfied that the agency relationship between Burke and Rhee could be inferred from testimony other than that of Mackey concerning his conversations with Rhee. For example, Burke and Rhee came together to plaintiffs' farm on the two transactions and both discussed the purchases with Mackey. In connection with the second purchase, which is at issue here, Burke and Rhee came together to plaintiffs' farm. Burke then departed and left Rhee behind to conclude the purchase. Moreover, the testimony was admissible under Rule 801(d)(2)(D) of the Federal Rules of Evidence, which provides that a statement is not hearsay if it is offered against a party and is "a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship." Fed.R.Evid. 801(d)(2)(D). *See, e.g., Whiteley v. OKC Corp.*, 719 F.2d 1051, 1057 (10th Cir.1983); *Frank v. Bloom*, 634 F.2d 1245, 1251 (10th Cir. 1980); *see generally* 4 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 801(d)(2)(D)[01] (1984). We therefore agree with the district court's conclusion that the testimony was properly admissible.

6. absence of corporate records,

7. use of the corporation as a facade for operations of the dominant stockholder or stockholders, and

8. use of the corporate entity in promoting injustice or fraud

I R. 188. The eight factors in the district court's instruction correctly state the Kansas law on disregarding the corporate entity. *See, e.g., Sampson v. Hunt,* 233 Kan. 572, 665 P.2d 743, 751 (1983); *Amoco Chemicals Corp. v. Bach,* 222 Kan. 589, 567 P.2d 1337, 1341–42 (1977); *Ramsey v. Adams,* 4 Kan.App.2d 184, 603 P.2d 1025, 1028 (1979); *Burge v. Frey,* 545 F.Supp. 1160, 1174 n. 6 (D.Kan.1982) (applying Kansas law); *see also Wegerer v. First Commodity Corp. of Boston,* 744 F.2d 719, 726–27 (10th Cir.1984) (applying Kansas alter ego doctrine); *id.* at 729–30 (McKay, J., dissenting) (same).

 We are satisfied that there was sufficient evidence for a reasonable jury to conclude that several of these factors warranted disregarding the corporate entity of U.S. Agro. For example, U.S. Agro's failure to comply with corporate formalities is evidenced by the action taken by the Illinois Secretary of State to dissolve the corporation for failing to file an annual report or to pay the annual franchise tax. II R. 252–53. Moreover, the parties do not dispute the failure of U.S. Agro to pay dividends during the time at issue here.[4] In addition, there was evidence that Burke used $70,000 from the stop order on plaintiffs' check to pay off his personal obligations. Plaintiffs' Exhibit 6; V R. 109–11. Finally, the failure to pay plaintiffs for the heifers shipped to Korea could have been viewed by the jury as an attempt to use the corporate entity to promote injustice and fraud. We therefore conclude that the district court did not err in submitting this issue to the jury.[5]

## IV

### Punitive damages

Burke also argues that the district court erred in overruling his motion for a directed verdict as to punitive damages and in submitting that issue to the jury. We agree.

Kansas law on the award of punitive damages incident to a breach of contract action is as follows:

> "Damages for breach of contract are limited to pecuniary losses sustained and exemplary or punitive damages are not recoverable in the absence of an independent tort. This exception to the rule of unavailability of punitive damages in breach of contract actions is recognized when some independent tort or wrong results in additional injury which justifies the assessment of punitive damages by way of punishment of the wrongdoer. In such a case the proof of the independent tort must indicate the presence of malice, fraud or wanton disregard for the rights of others."

*Plains Resources, Inc. v. Gable,* 235 Kan. 580, 682 P.2d 653, 664 (1984) (citation omitted) (quoting *Guarantee Abstract & Title*

---

**4.** Burke argues on appeal that the failure of U.S. Agro to pay dividends during this period was "a normal and expected development." Brief of Appellant 25. Assuming this to be true, we still note that the failure to pay dividends is a proper factor to consider in deciding whether to pierce the corporate veil under Kansas law.

**5.** Burke also argues that the district court erred as a matter of law in combining the instruction on disregarding the corporate entity with the instruction concerning Burke's acting in his individual capacity and Rhee's acting as Burke's agent. Brief of Appellant 20–22. Burke contends that the instruction was faulty because there was insufficient evidence to justify submitting to the jury the issue of Burke's individual liability and agency relationship with Rhee.

Plaintiffs respond that Burke failed to perfect this ground for appeal because he did not object below to the instruction on this ground, and in any event there is sufficient evidence to support each of these theories. Brief of Appellees 29–36. We previously have concluded in *supra* Part II that there was sufficient evidence to present jury questions on these issues. We therefore must reject Burke's challenge to the combination of these theories in the instruction.

*Co. v. Interstate Fire & Casualty Co.*, 232 Kan. 76, 652 P.2d 665, 667 (1982)).[6]

Under Kansas law, "[w]hen alleged fraud relates to promises or statements concerning future events, the gravamen of such a claim is not the breach of the agreement to perform, but the fraudulent representation concerning a present, existing intention to perform, when such intention is in fact nonexistent." *Modern Air Conditioning, Inc. v. Cinderella Homes, Inc.*, 226 Kan. 70, 596 P.2d 816, 824 (1979). For plaintiffs to be entitled to punitive damages here, the evidence, viewed in the light most favorable to plaintiffs, must show that Rhee was acting as Burke's agent in making the promise to return to Olathe to settle the dispute; that "[Rhee] did not intend to perform upon [that] promise[ ] at the time [it was] made; that the promise was made with intent to deceive [plaintiffs] and to induce them from refraining to act; that [plaintiffs] reasonably relied upon the promises; and that [plaintiffs] sustained damages thereby." *Id.*

 Kansas law requires that the evidence supporting a finding of fraud must be clear and convincing. *See, e.g., W-V Enterprises, Inc. v. Federal Savings & Loan Insurance Corp.*, 234 Kan. 354, 673 P.2d 1112, 1121 (1983); *Nordstrom v. Miller*, 227 Kan. 59, 605 P.2d 545, 552 (1980); *Modern Air Conditioning, Inc.*, 596 P.2d

at 824.[7] Kansas courts have held that for evidence to be sufficiently "clear and convincing" to support a finding of fraud, "the witnesses to a fact must be found to be credible; the facts to which the witnesses testify must be distinctly remembered; the details in connection with the transaction must be narrated exactly and in order; the testimony must be clear, direct and weighty; and the witnesses must be lacking in confusion as to the facts at issue." *Modern Air Conditioning, Inc.*, 596 P.2d at 824. We are convinced that the evidence is insufficient under this standard to support the finding of fraud needed to sustain the punitive damages award for two reasons.

First, plaintiffs failed to present any clear evidence at trial that Rhee did not intend to return to Olathe at the time he made the promise. In very similar circumstances, the Kansas Supreme Court held that the absence of proof on the defendant's intention not to comply with a promise at the time that it was made precluded a finding of fraud. *See Modern Air Conditioning, Inc.*, 596 P.2d at 824. On appeal, plaintiffs rely on evidence such as Burke and Rhee's subsequent refusal to return to Olathe or to pay for the heifers to support the findings of intent. *See* Brief of Appellee 21–22.[8] We must hold that such evi-

---

**6.** The district court correctly instructed the jury on punitive damages under this standard. The court instructed that

> to support their claim for punitive damages plaintiffs contend that they were induced to release cattle for shipment to Korea after defendant Burke obtained issuance of a stop payment order, upon assurances by Mr. Rhee that he would return to Olathe, Kansas, the following Monday to settle the transaction. Plaintiffs contend Mr. Rhee, acting as agent for defendant Burke in his individual capacity, knowingly made untrue statements of fact with intent to deceive or with reckless disregard for the truth. If you conclude that Mr. Rhee was acting within the scope of his authority in making these statements, and that plaintiffs acted in reliance upon these misrepresentations, resulting in injury to plaintiffs, then in addition to actual damages you may award plaintiffs punitive damages not to exceed $75,000.00.

I R. 190.

**7.** Although fraud includes "any cunning, deception, or artifice used, in violation of a legal or equitable duty, to circumvent, cheat, or deceive another, the forms it may assume and the means by which it may be practiced are as multifarious as human ingenuity can devise." *W-V Enterprises, Inc.*, 673 P.2d at 1121 (quoting *Augusta Bank & Trust v. Broomfield*, 231 Kan. 52, 643 P.2d 100, 109 (1982) (quoting 37 C.J.S., *Fraud* § 1, p. 204)).

**8.** Plaintiffs also contend that Burke's application of $70,000 from the stop order on plaintiffs' check to pay his personal obligations justifies the jury's punitive damages award. Brief of Appellees 22–23. The timing of these events, however, does not support the punitive damages award.

Rhee gave the $74,200 check to Mackey on January 29, 1979. On February 2, Burke stopped payment on the check and Rhee promised Mackey that he would return to Olathe on February 5 to settle the dispute if Mackey would

dence alone does not rise to the level of "clear and convincing" evidence needed under Kansas law to support the finding of fraud and the assessment of punitive damages.

Second, plaintiffs did not offer clear and convincing evidence that their reliance on Rhee's promise caused additional injury. On appeal, plaintiffs point to their decision to release the cattle in reliance on Rhee's promise as proof of additional injury. *See* Brief of Appellees 27. Plaintiffs do not explain why these damages were not fully recovered by the breach of contract remedy with the award of $74,200 (the amount of the stop order) in actual damages. We must conclude that plaintiffs failed to show how the alleged independent tort caused additional damages beyond those suffered by the breach of contract as required by Kansas law.

## V

### Conclusion

For these reasons the judgment awarding $74,200 in actual damages against defendant Burke is AFFIRMED; the judgment awarding $50,000 in punitive damages against defendant Burke is REVERSED; and the cause is REMANDED to the district court for entry of a corrected judgment in accord with this opinion.

permit the remaining heifers to be shipped to Korea. On February 6, Burke applied $70,000 to his personal obligations. Plaintiff's Exhibit 6; V R. 109–11. Burke's action in transferring these funds four days after Rhee's promise to return to Olathe and one day after Rhee's failure to fulfill his promise does not provide clear evidence that Rhee did not intend to return to Olathe at the time he made the promise.