No. 50,433

SHAWNEE STATE BANK, *Plaintiff-Appellee,* v. NORTH OLATHE INDUS-
TRIAL PARK, INC., *Defendant-Third Party Plaintiff-Appellant,*
ROSEDALE STATE BANK AND TRUST COMPANY, *Defendant-Third
Party Plaintiff-Appellee,* NORTH OLATHE WAREHOUSE ASSO-
CIATES, a Missouri limited partnership, *Third Party Defend-
ant-Appellee,* DAVID L. CURRY, an individual, *Third Party De-
fendant-Appellee,* SECURITY TITLE COMPANY, INC., *Third Party
Defendant-Appellee.*

(613 P.2d 1342)

Opinion filed July 18, 1980.

*Bruce W. Pitzer,* of Shawnee Mission, argued the cause and *Hallet C. Parrish,* of
Merriam, was with him on the brief for the appellant.

*Barton P. Cohen,* of Overland Park, argued the cause and was on the brief for
Rosedale State Bank and Trust Company, appellee.

*Howard S. Levitan,* of Prairie Village, argued the cause and was on the brief for
North Olathe Warehouse Associates, appellee.

*Fred J. Logan, Jr.,* of Overland Park, argued the cause and was on the brief for Security Title Company, Inc., appellee.

No appearance by Shawnee State Bank and David L. Curry, appellees.

The opinion of the court was delivered by

FROMME, J.: This appeal is from judgments entered in an action to foreclose mortgages on Lot 4, North Olathe Industrial Park, a subdivision in the City of Olathe, Johnson County, Kansas. The plaintiff, Shawnee State Bank, was the holder of a second mortgage. North Olathe Industrial Park, Inc. (Industrial Park) was the record title owner of Lot 4.

The defendant-third party plaintiff, Rosedale State Bank and Trust Company (Rosedale Bank), was the holder of a first mortgage covering Lot 4 and additional adjacent lots. North Olathe Warehouse Associates, a Missouri limited partnership (Warehouse Associates), was the record title owner of the adjacent lots. In purchasing the adjacent lots Warehouse Associates had assumed and agreed to pay the indebtedness against all the lots including Lot 4.

After a trial to the court the following judgments were entered: (1) Shawnee State Bank obtained a judgment against Industrial Park for $31,883.10 with interest and for foreclosure of the second mortgage on Lot 4; (2) Rosedale Bank obtained a judgment against Industrial Park and Warehouse Associates for $28,655.65 with interest and for foreclosure of the first mortgage on Lot 4; and (3) Industrial Park obtained a judgment against Warehouse Associates for $25,000.00, which indebtedness arose from the contract by which Warehouse Associates assumed and agreed to pay the amount of the first mortgage indebtedness on Lot 4.

The facts giving rise to these judgments are extremely complicated. The foregoing is merely an overview given for the purpose of enabling the reader to evaluate the facts which follow.

Lot 4 was one of thirteen lots subdivided and platted in North Olathe Industrial Park. This property was subdivided by a corporation referred to as CL&D. CL&D purchased the property and gave to the sellers a purchase money mortgage due within a year. CL&D failed to make the principal payment due and the sellers demanded payment. CL&D eased the pressure by selling two of the lots and applying the proceeds on the indebtedness. CL&D also had obtained financing to construct a building on some of its

lots. Financing was by the Shawnee State Bank which held a note for a substantial sum secured by a mortgage.

CL&D finally transferred the remaining eleven lots to Industrial Park subject to the mortgages held by the former owners and by the Shawnee State Bank. Industrial Park then borrowed $160,000.00 from Rosedale Bank on a short-term loan and first mortgage covering the lots. A portion of the proceeds of this loan was used to pay the original owners and the balance was paid to the Shawnee State Bank. Industrial Park in its attempt to obtain financing got in touch with David L. Curry. He was a mortgage broker. The period of the short-term financing had to be extended. Curry was unable to obtain permanent financing on these lots for Industrial Park. Warehouse Associates, together with Mortgage Services, Inc. which was a general partner of Warehouse Associates, became interested in purchasing the lots from Industrial Park. A purchase agreement was entered into on October 15, 1975. Warehouse Associates agreed to purchase all of the lots, except Lot 4, for $210,000.00. Industrial Park, in an effort to salvage something, retained title to Lot 4. The entire agreement was contingent on Warehouse Associates being able to assume the Rosedale Bank loan and obtain an extension on the term of the loan for an additional twelve months.

During the extension period Warehouse Associates received a permanent loan commitment from Plaza Savings & Loan for $185,000.00. A $25,000.00 "hold back" was later required because of potential building and construction liens. In order to close the sale in a manner satisfactory to Plaza Savings, Industrial Park executed two deeds. One deed was executed to Lot 4 and delivered to Security Title Company, Inc., and the second deed covering the balance of the adjacent lots was executed to Warehouse Associates. Both deeds were held by Security Title as escrow agent. When the loan from Plaza Savings came through and the money was made available approximately $135,000.00 was paid to Rosedale Bank for release of its mortgage on all lots, except Lot 4. This left a balance of $25,000.00 due Rosedale Bank on Lot 4. The balance of the loan proceeds was used to clear construction liens existing against the lots, to pay $13,000.00 to Shawnee State Bank and to pay other sums due Mortgage Services, Inc. Warehouse Associates was able to obtain the extension agreement on the indebtedness from Rosedale Bank by assuming and agreeing to pay the $25,000.00. Thereafter Security Title

executed a deed conveying title to Lot 4 to Industrial Park. The deed was subject to the mortgage of the Rosedale Bank, and Industrial Park assumed and agreed to pay the same.

Thereafter Industrial Park, which previously had become indebted to the Shawnee State Bank, refinanced its indebtedness with said bank and executed a second mortgage on Lot 4 to secure the indebtedness. As time passed Industrial Park failed to pay the interest due on this loan, and Shawnee State Bank initiated this lawsuit which resulted in entry of the judgments previously outlined, together with an order directing the sale of Lot 4 to satisfy the two mortgage liens.

Although Industrial Park did obtain a joint judgment in this action for $25,000.00 against North Olathe Warehouse Associates, a Missouri limited partnership, and Mortgage Services, Inc., a general partner of North Olathe Warehouse Associates, it appeals from all judgments, claiming various errors on the part of the trial court. We will consider the points raised.

Appellant argues it was relieved from the primary liability on the mortgage to Rosedale Bank when Warehouse Associates assumed and agreed to pay the amount due on the mortgage on Lot 4. It contends the primary obligation which it previously had assumed became one of surety. See *Federal Land Bank v. Butz,* 156 Kan. 662, Syl. ¶ 2, 135 P.2d 883 (1943). It further argues when the due date of its surety obligation was extended by Rosedale Bank without its knowledge or consent it was thereby relieved of further obligation on the loan.

The difficulty with this argument is that it is based on a faulty premise for Industrial Park did have knowledge of and did consent to the extension. We note that the agreement for the sale of the lots adjacent to Lot 4, which agreement was between Industrial Park and Warehouse Associates, was contingent on Warehouse Associates being able to assume the Rosedale Bank loan and to extend the term of the loan for an additional twelve months. Industrial Park not only had knowledge that an extension was to be sought by Warehouse Associates, but it agreed to an extension when it signed the agreement to sell the property.

An additional reason appears why Industrial Park cannot support such a claim. The sale agreement with Warehouse Associates was entered into on October 15, 1975. Next the Rosedale Bank and Warehouse Associates executed the extension agreement on

the indebtedness. Thereafter Security Title executed a deed conveying title to Lot 4 to Industrial Park subject to the Rosedale Bank mortgage, which Industrial Park as grantee assumed and agreed to pay. It is apparent that this agreement to assume the indebtedness postdated the extension agreement. So, when Industrial Park accepted the deed as grantee it not only had knowledge of the remaining indebtedness but it also accepted the primary obligation to pay the same. The trial court was correct in refusing to accept these arguments of appellant.

In closing the sale of the adjacent lots under the agreement between Industrial Park and Warehouse Associates, certain distributions of funds were made by the escrow agent, Security Title Company. Appellant, Industrial Park, sued to recover some of the payments distributed, as being made by Security Title without authority. We will consider the propriety of these distributions next.

The first item was for $5,000.00. Industrial Park argues this amount was paid to David Curry for selling the property and was illegally paid because he was not a licensed real estate salesman or broker. The real estate contract provided:

"8.   Seller agrees to pay to Mortgage Services, Inc., the sum of Five Thousand Dollars ($5,000.00) at the time of closing."

David Curry was president and managing officer of Mortgage Services, Inc. There is nothing in the record to establish that the amount was not properly paid to Mortgage Services, Inc., as provided in the contract. The statute relied on by appellant is K.S.A. 58-3019 which requires a person engaged in the business of a real estate broker or salesman to have a Kansas license before that person may maintain an action in the courts of Kansas to collect a fee or compensation for the sale of real estate. In the present case, the $5,000.00 was paid and no action to recover the amount had to be filed. Therefore, the statute never came into play. In addition, the payment was made in accordance with a provision in the written agreement of these parties and the trial court approved the payment without determining the exact purpose for which it was paid. Mortgage Services, Inc. had rendered services in finding a source of mortgage funds to enable the parties to complete the sale. The allowance does not appear to be illegal or improper.

Industrial Park quarrels with the allowance of two additional

items paid out by the escrow agent when the loan was closed. The first appears to have been a $3,000.00 item paid for engineering fees incurred by Industrial Park and the second was an additional $3,400.00 paid to Mortgage Services, Inc. on the authorization of David Curry. The trial court determined that these items were properly paid from the loan proceeds. No more specific findings appear. Appellant denies that David Curry had authority to authorize these payments. Agency is denied by Industrial Park.

In reviewing the record it appears that Industrial Park did get in touch with David Curry at the outset to assist it to obtain financing for the purchase of the lots. Curry obtained short-term financing from Rosedale Bank. When permanent financing was not forthcoming, Curry then suggested a sale by Industrial Park to Warehouse Associates. Curry arranged the sale in such a way that Industrial Park could retain title to Lot 4. Curry was in the mortgage and commercial loan business. Berle Lee, an officer of Industrial Park, testified that Curry "represented us in, you know, in acquiring the loan and that type of thing." Curry and Berle Lee met with an officer of Security Title, the escrow agent, several times before the sale was closed. Curry and Lee discussed the closing of the transaction with an officer of Security Title. Curry testified at trial that Orval Landis, the president of Industrial Park, and the corporation's accountant met with a Mr. Shanahan of Security Title to prepare a list of debts that had to be paid prior to closing. A list of those debts was gathered by Shanahan. They had been incurred by Industrial Park and were to be paid from the $25,000.00 "hold back" fund. Curry testified that Lee knew these potential liens existed and if they were not paid Industrial Park would not be able to convey clear title. When questioned about the authorization given to Curry or Security Title to pay these bills, Lee testified that he did not know if the president or secretary of Industrial Park gave such authority or not. The contract of sale provided that the property was to be free of liens. Curry was present at the closing and did authorize payment of the various items.

The law recognizes two distinct types of agencies, one actual and the other ostensible or apparent. The authority of an actual agent may be either express or implied. *Theis v. DuPont, Glore Forgan, Inc.,* 212 Kan. 301, 306, 510 P.2d 1212 (1973).

It is an express agency if the principal has delegated authority

to the agent by words which expressly authorize the agent to do a delegable act. It is an implied agency if it appears from the statements and conduct of the parties and other relevant circumstances that the intention was to clothe the agent with such an appearance of authority that when the agency was exercised it would normally and naturally lead others to rely on the person's acts as being authorized by the principal. An ostensible or apparent agency may exist if a principal has intentionally or by want of ordinary care induced and permitted third persons to believe a person is his or her agent even though no authority, either express or implied, has been actually conferred upon the agent. *Gardner v. Rensmeyer,* 221 Kan. 23, Syl. ¶ 1, 557 P.2d 1258 (1976); *Greep v. Bruns,* 160 Kan. 48, Syl. ¶ 4, 159 P.2d 803 (1945). Under the facts and circumstances we believe Industrial Park by the actions of its officers induced others to rely on the ostensible or apparent authority of Curry and that it became bound thereby. The appellant accordingly was bound by Curry's authorizations to Security Title at the closing of the sale agreement. The trial court properly denied appellant's claim of unauthorized distribution of sale proceeds.

The final issue raised in this appeal concerns a claim by appellant that Warehouse Associates, a Missouri limited partnership, failed to comply with the requirements of K.S.A. 56-123b before doing business in Kansas. The appellant argues that because of such failure the partners became liable as general partners on the $25,000.00 judgment entered by the trial court against the limited partnership. In support of its position appellant cites both a California and a Texas case for the proposition that a limited partner becomes liable as a general partner when a foreign limited partnership does business within a state without complying with filing statutes. It is not necessary for us to examine that question in this case.

K.S.A. 56-123b, then in effect, provided in pertinent part:

"(a) No limited partnership organized under the laws of any jurisdiction other than this state shall do any business in this state until it shall have filed with the secretary of state an application for authority to do business in this state as a foreign limited partnership."

Appellant contends in its brief that Warehouse Associates was not a properly registered foreign limited partnership until February 3, 1976, when the articles of limited partnership were

recorded in the office of the Register of Deeds of Johnson County. However, appellant is in error as to when a foreign limited partnership may do business. Under K.S.A. 56-123b a foreign limited partnership is authorized to do business in this state on the date the application is filed with the Secretary of State, not when it is filed with the register of deeds of a county. The filing with the Secretary of State in the present case occurred on January 30, 1976. It does not appear the partnership was doing business in Kansas before January 30, 1976. That was the date the parties completed the sale to Warehouse Associates and disbursed the sale proceeds.

However, another reason appears why appellant cannot prevail. Appellant failed to join the individual partners in this action. No attempt was made to name them or to obtain service of process upon them before the case was tried. It cannot now shift the liability for the judgment from the limited partnership to the individual partners.

Various other contentions are made by the parties against whom judgments were entered. We have examined only those contentions raised by North Olathe Industrial Park, Inc.; it alone appealed from these judgments. We find that upon the whole record substantial justice has been done and the judgments of the trial court are affirmed.