No. 57,947

PROFESSIONAL LENS PLAN, INC., *Plaintiff-Appellant*, v. POLARIS LEASING CORPORATION, *Defendant and Third Party Plaintiff-Appellee*, v. IMPACT SYSTEMS, a corporation, and OHIO SCIENTIFIC, a corporation, and OKIDATA CORPORATION, *Third Party Defendants-Appellees.*

(710 P.2d 1297)

Opinion filed December 6, 1985.

*John C. Fay*, of Manhattan, argued the cause and was on the brief for plaintiff-appellant.

*Donn J. Everett*, of Manhattan, argued the cause, and *Judith E. Pottorff*, of Manhattan, was with him on the brief for defendant-appellee Ohio Scientific.

The opinion of the court was delivered by

MILLER, J.: This is an appeal by the plaintiff, Professional Lens Plan, Inc., from an order entered by the Riley District Court granting a motion for summary judgment in favor of the defendant, Ohio Scientific, a corporation. This is the second appearance of this case in this court. See *Professional Lens Plan, Inc. v. Polaris Leasing Corp.*, 234 Kan. 742, 675 P.2d 887 (1984). The sole issue here is whether the record establishes that Impact Systems was the agent of Ohio Scientific. The trial court found that it did not.

Early in 1979, Professional Lens Plan, Inc., (PLP, or the plaintiff) engaged Loren H. Shellabarger to help select a computer system. He had wide experience in the field and, while he had no detailed knowledge of Ohio Scientific's computers, he was aware of them as well as forty or fifty others. During Shellabarger's search, Ohio Scientific (OSI) ran several large display ads in the microcomputer media. The ads listed a telephone number. Shellabarger called the OSI number and was referred to two dealers, one of which was Impact Systems, a corporation in Lee's Summit, Missouri. He visited several times over a two- or three-month period with Gary Comens, president and principal owner of Impact.

Ultimately, Shellabarger presented five computer systems to Dr. Price, one of the principals of PLP, and Price selected a computer manufactured by OSI. An order was placed with Impact. Impact did not carry computers in stock, but ordered a C3-B microcomputer from OSI, and an NEC printer and a terminal from Tekaids. The computer was delivered in September 1979. For tax purposes, PLP leased the computer from Polaris Leasing Corporation; Polaris paid Impact for the system but had nothing to do with the selection of or negotiation for the system. Impact delivered and installed the system at the plaintiff's place of business in Manhattan, Kansas. Problems surfaced immediately and the computer never worked properly.

PLP initially sued Polaris for cancellation of the lease contract and damages. Polaris counterclaimed for the payments due on the lease. Plaintiff settled that action by paying $20,000 to Polaris in order to resolve its counterclaim. Plaintiff sought and was

granted permission to amend its pleadings to bring an action directly against Impact, OSI, and Okidata, the manufacturer of a hard disc, one of the major component parts of the computer.

In 1984 we heard an interlocutory appeal by PLP and Okidata. We quote from the opinion for the statement of the issues and the resolution thereof:

"The first . . . issue concerns whether the district court erred in finding Professional Lens had a cause of action against Okidata. Stated more specifically, the question is whether Kansas permits a corporate ultimate purchaser, who has incurred only economic loss, as opposed to personal injury or property damage, to recover on theories of breach of implied warranty of fitness and merchantability, from a manufacturer with whom the ultimate purchaser was not in contractual privity.

. . . .

"We conclude implied warranties of fitness and merchantability are not extended to a remote seller or manufacturer of an allegedly defective product, which is not inherently dangerous, for only economic loss suffered by a buyer who is not in contractual privity with the remote seller or manufacturer. Accordingly the district court erred in holding that Professional Lens had a cause of action against Okidata Corporation for economic loss based on breach of implied warranty.

"The second issue . . . [Are warranty and damage limitations contained in Okidata's sale of the hard disc to Ohio Scientific binding upon Professional Lens, the ultimate purchaser?] . . . is moot.

"The third issue is whether the district court erred in permitting Professional Lens to amend its pleadings after the expiration of the applicable statute of limitations and bring an action directly against third-party defendants Okidata Corporation and Ohio Scientific for breach of implied warranties.

. . . .

"Here again, this court's previous determination Professional Lens has no cause of action against Okidata renders this issue as it relates to Okidata moot. However, it would be inappropriate to move to the next issue without reference to the procedural problems that exist in this case. Only Okidata sought an interlocutory appeal on the first three issues raised in this case and the district court granted the right to Okidata alone to take this appeal on these issues. Ohio Scientific is an *appellee* herein and is not an opposing party to any position of appellant Okidata in this appeal. Notwithstanding these facts, Ohio Scientific wears the same shoes as does Okidata as to issues number one (implied warranty) and three (statute of limitations). Ohio Scientific has filed a brief herein which essentially is a 'me too' to Okidata's brief. Despite the procedural problems in the way the matter comes before us, we conclude judicial economy and the best interests of the litigants would be better served by simply declaring *the lack of privity between Professional Lens and Ohio Scientific defeats Professional Lens' claims against Ohio Scientific for breach of implied warranties* on the rationale set forth in issue number one herein. Therefore, the *statute of limitations* issue is also moot as to Ohio Scientific. [Emphasis supplied.]

. . . .

"The final issue is the only issue raised by Professional Lens Plan, Inc., in its interlocutory appeal and is stated as follows: In light of the trial court's ruling sustaining Impact Systems' motion for summary judgment against Polaris Leasing in this case, does privity of contract exist between plaintiff and Impact Systems?

. . . .

". . . This is a matter which was not determined by the district court.

"We conclude this issue is not the proper subject of an interlocutory appeal and, accordingly, we have no jurisdiction to determine it. The interlocutory appeal of Professional Lens must be dismissed." 234 Kan. at 745-57.

Our opinion was filed in the district court of Riley County on February 8, 1984. On May 4, the plaintiff filed an amended petition alleging that Impact was an agent of OSI. OSI responded by filing a motion for summary judgment together with a memorandum in support thereof. It contended that there were no facts before the court which supported plaintiff's claim that Impact was in fact an agent of OSI. Instead, it contended the facts clearly showed that Impact was simply a dealer, one who buys and sells, and that there was no agency relationship between OSI and Impact.

The trial court prepared a memorandum setting forth the facts and its ruling. The court carefully reviewed the depositions and other records before it, and indexed its findings of fact to those documents. Omitting the citations to the record, the trial court's findings of fact and conclusions of law are as follows:

### "FACTS

"(1) Impact Systems is a retailer of computer products and services for computers ranging from repair and installation to programming.

"(2) Impact Systems selected the computer package based upon the needs of the customer, Professional Lens Plan, and ordered equipment from various manufacturers to fill that order. The computer package was selected by Shellabarger, as a consultant for the plaintiff. Shellabarger did use an Ohio Scientific catalog.

"(3) Impact Systems, in dealing with Ohio Scientific, was not given any preferential treatment that would give the appearance of an agency relationship. Comens stated that as he was looking for the solution to the problem, he inquired about replacement of interface boards. Ohio Scientific agreed to sell him additional equipment. When the equipment which Impact Systems requested did not solve the problem, Impact Systems either did not ask for a refund, or if they asked for a refund of the equipment, the refund was denied. Shellabarger contacted Ohio Scientific from one of their large ads in the Micro Computer Media. Ohio Scientific referred Shellabarger to Impact Systems. When the equipment continued to fail to operate, Shellabarger called Ohio Scientific on two occasions. Ohio Scientific told Shellabarger to take up the problem with the dealer and not

with them. On the second phone call by Shellabarger to Ohio Scientific, they again told him to work with Impact Systems to get the repairs made.

"(4) Impact Systems was authorized to sell Ohio Scientific's system but so was anyone else who wanted to sell equipment. The plaintiff denies this allegation. The plaintiff contends that Ohio Scientific had a system of dealers that were obtained by payment of money by the prospective dealers.

"(5) The selection of Ohio Scientific's equipment was made by Loren Shellabarger from forty to fifty vendors.

"(6) No oral or written communication between Ohio Scientific and the plaintiff Professional Lens Plan exists concerning the use to which Professional Lens Plan intended to put the computer. The plaintiff denies this contention referring to calls made by Shellabarger directly to Ohio Scientific.

"(7) The attached invoices, exhibits from Comens' deposition, show no privity of contract between Professional Lens Plan and Ohio Scientific; contain no representations regarding a fiduciary relationship between Impact Systems and Ohio Scientific; and contain no representations as to the use that Professional Lens Plan intended to make of the equipment.

"(8) The computer was delivered to Professional Lens in August or September of 1979. It never fully functioned. Comens, on behalf of Impact Systems, talked to Ohio Scientific on quite a few occasions.

### "WAS IMPACT SYSTEMS AN AGENT FOR OHIO SCIENTIFIC? DOES THE PLAINTIFF HAVE PRIVITY OF CONTRACT WITH OHIO SCIENTIFIC?

"The Supreme Court has ruled there is no privity of contract between Professional Lens Plan and Ohio Scientific because there is no contractual privity between these parties. The plaintiff is now alleging that it can directly sue Ohio Scientific because Impact Systems was an agent of Ohio Scientific and that the plaintiff now has privity of contract with Ohio Scientific. This is a new theory on behalf of the plaintiff and it has not been raised until this time. In this case, Gary Comens considered himself a dealer for Ohio Scientific. Webster's Twentieth Century Dictionary defines a dealer as one who deals in anything; a trader; a trafficker; a shopkeeper; a broker; a merchant; and a dealer of drygoods. This Court concludes that the word dealer imparts no connotation of control, management or a fiduciary responsibility to account to someone else for its actions. Further, the Court concludes that an agency relationship can, indeed, be created by implication; however, the record is devoid of any facts which render the implication that Impact Systems was acting on behalf of Ohio Scientific. All of the invoices and paperwork in the transaction name Impact Systems as the seller of the various items of equipment to the plaintiff as set forth in the attached exhibits. The Kansas Supreme Court in this case on appeal, cites with approval the language used by Judge Saffels in *Owens-Corning Fiberglas v. Sonic Dev. Corp.*, 546 F. Supp. 533 [D. Kan. 1982], in which the Court stated:

" 'The issue is whether or not privity of contract is a requirement in Kansas for a claim based on breach of implied warranty. We hold that because the plaintiff did not buy the air compressors directly from Quincy, but instead bought them from Sonic, an intermediary in the chain of distribution, there is no privity between plaintiff and Quincy for breach of implied warranty.'

"Here, simply put, Ohio Scientific sold a computer to Impact Systems and

Impact Systems sold the computer to the plaintiff. Although the sale was, in fact, from Impact Systems to the plaintiff for purposes of tax benefits to the plaintiff and for other business considerations, Impact Systems purchased the computer from Ohio Scientific but sold it to . . . Polaris Leasing Corporation. Polaris then executed an agreement with Professional Lens whereby it would lease the equipment to Professional Lens.

"This court·is not persuaded by the plaintiff's argument that because the plaintiff's representative first saw the advertisement in Ohio Scientific's catalog who referred the plaintiff to Impact Systems *and another dealer*, would indicate agency by implication. Other dealers may have been referred by Ohio Scientific upon request. This Court finds no evidence to indicate that Impact Systems had apparent or ostensible authority of agency on behalf of Ohio Scientific. This Court further finds nothing in the record to indicate that Ohio Scientific knowingly permitted Impact Systems to exercise authority or held out Impact Systems as possessing the authority to act as its agent.

"The Supreme Court has ruled that specific privity must exist in order for the plaintiff to pursue an action against a party and hypothetically, even if an agency was found to be implied in the relationship between Ohio Scientific and Impact Systems, the plaintiff must go further and show specific representations that pass from Ohio Scientific without alteration or variance through Impact Systems directly to the plaintiff. The facts do not suggest this to be so.

"The uncontroverted facts submitted by the plaintiff indicate that there were at least two dealers from which the plaintiff could choose. It is clear that Impact Systems was a dealer and was, in fact, the party who participated in the transaction with the plaintiff. The computer system was purchased by Impact Systems for resale. The facts do not support the proposition that Impact Systems was working as an agent of Ohio Scientific. Like any retail merchant, Impact Systems was working for its own benefit, and was working to make a profit which would be the difference between the wholesale price they paid for the product and the retail purchase price which they sold it to the plaintiff for. There is no evidence that the plaintiff received any direct warranties from Ohio Scientific in this transaction.

"WHEREFORE, THE COURT CONCLUDES AS A MATTER OF LAW that Impact Systems was not an agent for Ohio Scientific."

The court then sustained OSI's motion for summary judgment against the plaintiff, and plaintiff's appeal followed.

In its findings of fact the court observed in paragraph No. 4 that plaintiff denies the claim that not only Impact Systems but anyone else who wanted to sell OSI equipment could do so, and that plaintiff contends that OSI had a system of dealers who could sell OSI equipment by payment of money by the dealers. We have carefully examined the record before us and find no evidence to substantiate plaintiff's position in this regard. There is no evidence that Impact paid OSI any money to become a dealer; Impact simply paid for the equipment it ordered. Im-

pact's president, Gary Comens, testified, "It is wide open. Anybody can sell OSI who wants to."

We have stated many times the standards governing the entry of summary judgment. In *Barnhart v. McKinney*, 235 Kan. 511, 516, 682 P.2d 112 (1984), we said:

"Summary judgment is proper if no genuine issue of fact remains, giving the benefit of all inferences which may be drawn from the admitted facts to the party against whom judgment is sought. *McAlister v. Atlantic Richfield Co.*, 233 Kan. 252, Syl. ¶ 1, 662 P.2d 1203 (1983). When summary judgment is challenged on appeal, an appellate court must read the record in the light most favorable to the party who defended against the motion for summary judgment. *McAlister*, 233 Kan. 252, Syl. ¶ 4."

In *Peoples Nat'l Bank & Trust v. Excel Corp.*, 236 Kan. 687, 695, 695 P.2d 444 (1985), we said:

"Summary judgment is proper where the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Summary judgment is particularly appropriate where the facts are not disputed and the only questions presented are questions of law. *Farmers State Bank & Trust Co. of Hays v. City of Yates Center*, 229 Kan. 330, 341, 624 P.2d 971 (1981). Here, there is really no dispute as to the facts. Plaintiff contends that those facts establish an implied agency; the trial court found that they do not. The determination of what constitutes agency and whether there is any competent evidence reasonably tending to prove the existence of agency is a question of law. *Henderson v. Hassur*, 225 Kan. 678, 682, 594 P.2d 650 (1979).

Both parties here agree on the definition of agency as given in *Walker v. Eckhardt*, 122 Kan. 453, 456, 251 Pac. 1093 (1927). An agency has been defined as a contract, either express or implied, by which one of the parties confides to the other the management of some business to be transacted in his name, or on his account, and by which that other assumes to do the business and to render an account of it.

In *Shawnee State Bank v. North Olathe Industrial Park, Inc.*, 228 Kan. 231, 236-37, 613 P.2d 1342 (1980), we said:

"The law recognizes two distinct types of agencies, one actual and the other ostensible or apparent. The authority of an actual agent may be either express or implied. [Citation omitted.]

"It is an express agency if the principal has delegated authority to the agent by words which expressly authorize the agent to do a delegable act. It is an implied

agency if it appears from the statements and conduct of the parties and other relevant circumstances that the intention was to clothe the agent with such an appearance of authority that when the agency was exercised it would normally and naturally lead others to rely on the person's acts as being authorized by the principal. An ostensible or apparent agency may exist if a principal has intentionally or by want of ordinary care induced and permitted third persons to believe a person is his or her agent even though no authority, either express or implied, has been actually conferred upon the agent."

Plaintiff contends that Impact was either an implied or an ostensible agent of OSI. There is no evidence and no claim that any express agency agreement existed between Impact and OSI. Plaintiff simply argues that certain conduct by Ohio led it to believe that there was an agency relationship. It argues that OSI, by referring Shellabarger to two local dealers, one of whom was Impact, led him and thus his client, the plaintiff, to believe that Impact was an agent for OSI. The person at OSI with whom Shellabarger spoke referred to Impact as a dealer in all three conversations. As the trial court noted, the word "dealer" is widely used and well understood. It means a person who buys and sells. In 25A C.J.S., Dealer, p. 533, we find the following:

"The term has a well-defined and commonly understood meaning, and implies buying to hold for sale.

"A dealer is one who deals; one who does business; and in the common acceptation, and, therefore in the legal meaning of the word, a 'dealer' is not one who buys to keep or makes to sell, but one who buys to sell again. Thus a 'dealer' is one who buys and sells; one who buys something in order to sell it; one who buys and sells goods and commodities; one who buys the product in quantities and parcels it out by sale in lesser amounts; one who buys to sell as an avocation or business; a person who buys and sells for the purpose of gain and profit, or who buys to sell to others at a profit."

Black's Law Dictionary 487 (4th ed. rev. 1968), defines a dealer: "In the popular sense, one who buys to sell,—not one who buys to keep, or makes to sell." There is no representation that Impact was an exclusive dealer, since no such representation was made to Shellabarger and since Shellabarger knew that Impact was ordering part of the system from one or more other manufacturers. Comens was able to buy and sell OSI computers, but he testified that anyone who wanted to could do so. This testimony is not controverted in the record. The fact that a retail commercial enterprise offers for sale a particular product does not indicate that the retailer is the agent of the manufacturer. Similarly, the mere fact that a manufacturer informs a proposed

customer that a particular item may be purchased through several retailers in a particular location does not make the retailers agents of the manufacturer. We have carefully reviewed the record before us and conclude that the trial court was correct in entering summary judgment. We find no evidence to indicate either an implied or an ostensible agency.

The judgment is affirmed.