# United States Court of Appeals
### FOR THE EIGHTH CIRCUIT

_____

No. 09-2040

_____

Ryan Fincher,                               *
                                            *
            Appellant,                      *
                                            *      Appeal from the United States
      v.                                    *      District Court for the
                                            *      Western District of Missouri.
St. Paul Fire & Marine Insurance            *
Company,                                    *
                                            *
            Appellee.                       *


_____

Submitted: January 13, 2010
Filed: February 18, 2010

_____

Before GRUENDER and SHEPHERD, Circuit Judges, and JARVEY,[1] District Judge.

_____

JARVEY, District Judge.

_____

[1]The Honorable John A. Jarvey, United States District Judge for the Southern District of Iowa, sitting by designation.

Ryan Fincher ("Fincher") appeals the district court's[2] grant of summary judgment to St. Paul Fire & Marine Insurance Company ("St. Paul") on his claim that St. Paul vexatiously refused to pay his underinsured motorist ("UIM") claim relating to injuries he sustained while driving a motorcycle as part of his employment as a police officer for the Unified Government of Wyandotte County/Kansas City, Kansas ("Unified Government"). Fincher argues that he was eligible for UIM coverage because the Unified Government employee who rejected the UIM coverage in excess of the statutory minimum lacked the legal authority to do so. St. Paul, the Unified Government's insurer, refused to pay Fincher's claim for UIM coverage, taking the position that the Unified Government employee who signed the form rejecting UIM coverage in excess of the statutory minimum ("the Rejection Form") was duly authorized to do so. Both parties filed motions for summary judgment, and the district court granted St. Paul's motion. For the reasons discussed below, we affirm.

## I.    BACKGROUND[3]

Fincher, a police officer for the Unified Government, sustained an injury on May 29, 2006, when the police motorcycle he was operating collided with a vehicle operated by Carl Anderson ("Anderson"). Fincher sued Anderson in state court and recovered a judgment for damages in the amount of $575,000. Anderson's automobile liability insurance was limited to $50,000 for all claims arising out of bodily injury to one person. Anderson's insurer paid Fincher the $50,000 limit of his liability coverage.

---

[2] The Honorable Fernando J. Gaitan, Jr., Chief Judge, United States District Court for the Western District of Missouri.

[3] Neither side to this appeal disputes the material facts, as set forth by the district court. Thus, the background facts recited here are taken largely from the district court's Order Granting St. Paul's Motion for Summary Judgment.

At the time of the accident, St. Paul provided automobile liability insurance coverage to the Unified Government. The Unified Government's policy in place provided coverage for bodily injury liability for up to $500,000 per occurrence, but it also included a $50,000 limit for UIM coverage. Fincher notified St. Paul of the state court judgment, but St. Paul, relying on the UIM coverage limit, refused to pay the remaining judgment. Fincher sued St. Paul for vexatious refusal to pay.

Both parties agree that Kansas law applies in this case. JN Exploration & Prod. v. W. Gas Res., 153 F.3d 906, 909 (8th Cir. 1998) ("[I]t is axiomatic that federal courts apply state substantive law in diversity suits."). Under Kansas law, an insurer may not issue an automobile insurance policy unless it contains uninsured motorist coverage in an amount equal to the limits of liability coverage for bodily injury or death. Kan. Stat. Ann. § 40-284(a). UIM motorist coverage is included as a part of the uninsured motorist coverage required above. Id. at § 40-284(b). However, an insured may reject, in writing, the amount of uninsured/underinsured motorist coverage in excess of that mandated by Kan. Stat. Ann. § 40-3017, which in this case is $50,000. Id. at § 40-284(c).

With respect to the insurance policy in place at the time of Fincher's accident, David Coleman ("Coleman"), the Risk Manager for the Unified Government, signed the Rejection Form on June 5, 2006. The Rejection Form reads, in pertinent part:

> I acknowledge that I have been provided Underinsured/Uninsured Motorists Coverage and, in addition, I have been offered the following in accordance with the State law of Kansas.
>
> I.  Single Limit Policies
>
> I have been given the opportunity to purchase Uninsured/Underinsured Motorists Coverage equal to my limit for bodily injury or death

-3-

> and instead I select a lower limit of $50,000 [amount is handwritten]. (Note: Limit selected may not be less than $50,000 Single Limit.)

As Risk Manager, Coleman was charged with selecting insurance for the Unified Government, negotiating with insurance companies, and recommending to his supervisor, Harold Walker ("Walker"), which insurance the Unified Government should purchase. Walker is General Counsel for the Unified Government and reports directly to the County Administrator. From 1989 through 2006, Coleman signed rejection forms similar to the one at issue in this case. However, in 2007 and 2008, the rejection forms were signed by someone in the County Administrator's office.

In granting St. Paul's motion for summary judgment, the district court noted that there were no genuine issues of material fact. Instead, the parties "dispute[d] the legal significance of particular actions and whether the Unified Government effectively rejected the excess limits for uninsured/underinsured mototist coverage."[4] Fincher v. St. Paul Fire & Marine Ins. Co., No. 08-00148, 2009 WL 973190, at *2 (W.D. Mo. 2009). The district court found that the Rejection Form was not a contract "in and of itself, but rather it is the insurance policy in its entirety, which represents the contract. At best, the 2006 rejection form is a confirmation regarding one of the terms of the contract, i.e., rejection of excess coverage." Id. at *4. Thus, the district court assumed, without deciding, that the Rejection Form was a document which required the signature of the County Administrator pursuant to the Unified

---

[4]Fincher apparently concedes this issue as the "Statement of Facts" in his brief to this court begins with the sentence, "This case revolves around a legal question." (Appellant's Br. at 8.) Likewise, St. Paul notes in its brief that, "These statutory and policy provisions frame the dispute between the parties." (Appellee's Br. at 17.) Specifically, St. Paul is referring to Kan. Stat. Ann. § 40-284 and the UIM policy language.

-4-

Government Charter.  Id.  The district court then found that Coleman was impliedly authorized to sign the rejection form because the

> Unified Government's manifestations to Coleman would lead him to believe that he was authorized to act on behalf of the Unified Government.  Although the county administrator or the Unified Government never expressly stated that Coleman would be authorized to sign the rejection forms, the authority for his actions can be inferred from the circumstances.

Id. at *5.  Finding that Coleman was authorized to sign the Rejection Form, the district court held that the rejection of excess UIM coverage was valid.  Id.  Fincher's appeal followed.

## II.    DISCUSSION

We review a district court's decision on cross-motions for summary judgment de novo.  Thirty and 141, L.P. v. Lowe's Home Ctrs. Inc., 565 F.3d 443, 445-46 (8th Cir. 2009) (citing J.E. Jones Constr. Co. v. Chubb & Sons, Inc., 486 F.3d 337, 340 (8th Cir. 2007)).  "Summary judgment is appropriate when, viewing the facts in the light most favorable to the non-movant, there are no genuine issues of material fact and the movant  is entitled to judgment as a matter of law."  Id. at 446.

Fincher argues that the district court erred in granting St. Paul's motion for summary judgment because Coleman was an unelected employee of the Unified Government who possessed no authority to sign the Rejection Form.  Thus, Fincher claims that the Unified Government's rejection of UIM coverage in excess of the $50,000 statutory minimum is void as a matter of law and St. Paul is liable for the full $500,000 policy limit.  According to Fincher, the fact that only Coleman signed the rejection of the excess UIM coverage renders the rejection ultra vires and unenforceable.

St. Paul argues that the district court did not err in granting its motion for summary judgment as Anderson was not underinsured.[5] It is St. Paul's position that the Rejection Form is valid, which therefore limits the Unified Government's UIM coverage to $50,000, because Coleman possessed the authority to sign the Rejection Form.

It is a question of law for a court to determine whether there is "competent evidence reasonably tending to prove" agency. Greep v. Bruns, 159 P.2d 803, 807 (Kan. 1945). Moreover, the party relying on the agency relationship has the "burden of establishing its existence by clear and satisfactory evidence." Town Ctr. Shopping Ctr., L.L.C. v. Premier Mortgage Funding, Inc., 148 P.3d 565, 569 (Kan. Ct. App. 2006).

Authority of an actual agent may be either express or implied. Shawnee State Bank v. N. Olathe Indus. Park, Inc., 613 P.2d 1342, 1347 (Kan. 1980). Express authority is when the agent is directly authorized. See id. A court must ascertain if authority was delegated "by words which expressly and directly authorized him to do a delegable act." Greep, 159 P.2d at 807. Implied agency may result from a single transaction, but it is "more readily inferable from a series of transactions." Mohr v. State Bank of Stanley, 734 P.2d 1071, 1076 (Kan. 1987) (internal quotations omitted). Implied agency arises when the principal and the agent "intended to make it appear

---

[5]See Halsey v. Farm Bureau Mut. Ins. Co., 61 P.3d 691, 700 (Kan. 2003):

> We conclude that the plain and unambiguous language of Kan. Stat. Ann. § 40-284(b) requires a limits-to-limits comparison in determinations as to whether UIM coverage exists. In those cases where the UIM coverage exceeds the limits of the bodily injury coverage carried by the owner or operator of the other motor vehicle, UIM coverage exists. However, in those cases such as the case we now consider, where the UIM coverage equals or does not exceed such limits no UIM coverage exists.

to others that the acts of the agent were authorized by the principal." Id. And such an agent contracting on behalf of a principal binds the principal if the contract was authorized by the principal. Bucher & Willis Consulting Eng'rs, Planners and Architects v. Smith, 643 P.2d 1156, 1159 (Kan. Ct. App. 1982).

Coleman testified that he was the sole person responsible for negotiating with insurers, either directly or through agencies, to get the best deal on automobile insurance he could get. He would then make a recommendation to Walker as to which policy the Unified Government should purchase. Walker described Coleman's job as follows: "He administers our insurance program." (Appellant's App. Tab C, Depo. p. 8, lines 10-11). Walker elaborated that it is Coleman's job "To procure and determine what insurance needs are necessary and to determine the risks that are to be covered by insurance." (Appellant's App. Tab C, Depo. p. 10, lines 6-8).

Once the invoice for the policy recommended by Coleman and approved by Walker was received, Coleman would send the bill to the Accounts Payable Department, and a check was signed by the Mayor and the County Administrator to purchase the insurance. Per Coleman's recollection, the Unified Government's automobile policy for 2006 cost between $200,000 and $300,000. Coleman would then sign the rejection form limiting the Unified Government's UIM coverage to $50,000. This practice was repeated every year since the Unified Government was formed in 1997, and actually dated back to 1989 when Coleman was employed as the Risk Manager for the City of Kansas City, Kansas, which later became the Unified Government. Coleman testified that it was his belief that he had been given authority to sign the rejection form by Walker. Walker also testified that Coleman was authorized to execute the rejection form, which would be part of his job as Risk Manager.

We hold, as a matter of law, that Coleman possessed the actual, implied authority to sign the Rejection Form. Coleman is the Risk Manager for the Unified Government. Coleman alone negotiated with the insurance companies, either directly

or through insurance agents, and selected a policy to recommend to Walker, his supervisor. The automobile insurance policy selected by Coleman and approved by Walker limited UIM coverage to $50,000. The Mayor and the County Administrator then signed the check purchasing the policy containing said limitation. After the policy was in place, Coleman signed the Rejection Form in order to satisfy Kan. Stat. Ann. § 40-284(c). This practice began, at the latest, in 1997 when the Unified Government was created, and continued until the 2006 policy at issue in this case. Coleman testified that he believed that he was authorized to sign the Rejection Form. Coleman's direct supervisor testified that Coleman possessed such authority. Their testimony stands undisputed. The evidence is clear and satisfactory that Coleman was an implied agent of the Unified Government when he signed the Rejection Form. See Town Ctr. Shopping Ctr., 148 P.2d at 569.

Finally, the court rejects Fincher's reliance on Blevins v. Bd. of County Comm'rs of County of Douglas, 834 P.2d 1344, 1351 (Kan. 1992), and its progeny. In Blevins, the county possessed no power or authority to call a binding election, yet the plaintiffs claimed that the statements made regarding holding such an election created an implied contract to follow through with that promise. Id. at 1351. Rejecting plaintiff's estoppel argument, the court in Blevins held, "If a municipal corporation enters into a contract it has no power to make, it is ultra vires and unenforceable and no further inquiry into the contract's validity is necessary." Id. (citing 10 McQuillin, Municipal Corporations § 29.02 (3d ed. rev. 1990)).

There is no doubt that the Unified Government possessed the power and authority to enter into a contract to purchase automobile insurance, and that the Unified Government had the power to reject excess UIM Coverage. Fincher's argument on this issue is internally inconsistent. Fincher does not claim that the entire policy negotiated and selected by Coleman is invalid. To the contrary, Fincher seeks to recover under the terms of this policy. The Unified Government's rejection of the excess UIM coverage was not ultra vires.

## III. CONCLUSION

For the foregoing reasons, we affirm the district court's grant of summary judgment to St. Paul.

_____