No. 48,085

JOHN J. GARDNER, *Appellee* v. EDWIN A. RENSMEYER, and PREMIUM
BROKERS EXCHANGE, INC., a Missouri Corporation, *Appellants.*

(557 P. 2d 1258)

Opinion filed December 11, 1976.

*David K. Fromme,* of Weeks, Thomas, Lysaught, Bingham and Mustain, Chartered, of Overland Park, argued the cause, and *Robert H. Bingham* and *Thomas Francis Sullivan,* of the same firm, were on the brief for the appellants.

*Thomas E. Ruzicka,* of Breyfogle, Gardner, Martin, Davis and Kreamer, of Olathe, argued the cause, and *John J. Phillips,* of the same firm, was with him on the brief for the appellee.

The opinion of the court was delivered by

FOTH, C.: John J. Gardner, an Olathe attorney, brought this action to recover unpaid attorney fees and disbursements of $3206.60. The defendants were Edwin A. Rensmeyer, his wife Maxine Rensmeyer, and two closely held corporations with which they were affiliated, Premium Brokers Exchange, Inc. (PBX), and Sibert Enterprises, Inc. Plaintiff's bill, the amount of which is undisputed, was for services alleged to have been performed for all four defendants, and after a trial to the court judgment was rendered against all four. Only the defendants Edwin Rensmeyer and PBX have appealed. They assert that they did not contract to pay for plaintiff's services, and that the evidence does not

support the trial court's finding that they did. The question essentially is one of agency.

Edwin Rensmeyer is a certified public accountant who, in 1971, ventured into the airport and commuter airline business in Oxford township, Johnson county. The airport was located at 111th Street and Highway I-35, from where shuttle flights were run to Kansas City International, several miles north of Kansas City, Missouri. The land on which the airport was located was owned by four separate entities, of which Mr. and Mrs. Rensmeyer were one. They leased the balance of the land from the other three owners, and then subleased the entire parcel to Sibert Enterprises, Inc. Sibert, the operating entity, was wholly owned by Edwin Rensmeyer, and he served as president, treasurer and director. His wife was vice-president, secretary and director.

In 1971 Rensmeyer applied for and received from Oxford township a special use permit authorizing the airport operation. Then, late in the year, he learned that the city of Lenexa was going to annex the airport. In February, 1972, he first met with plaintiff and engaged plaintiff's legal services to insure the continuation of the special use permit after the annexation.

Plaintiff's notes of that interview reflect the names of both Sibert Enterprises, Inc., and the appellant PBX. The latter corporation was owned by Mrs. Rensmeyer and her sister, Bernadine Cook, with the sister holding the bulk of the stock. Edwin Rensmeyer, while owning no stock in PBX, was its vice-president and treasurer, served on its board of directors, and acted in an advisory capacity to the two women. In the airport operations PBX furnished the capital, buying the planes, gas truck, and a trailer used at the airport, and leasing them to Sibert. Owning and leasing airport equipment had not been the purpose for which PBX was incorporated, but became its line of business at the suggestion of Edwin Rensmeyer.

Plaintiff's services covered a period from February, 1972, through June, 1973. They included not only the original zoning problem but real estate title work for Mr. and Mrs. Rensmeyer, and in particular the defense of a suit brought by neighboring landowners to enjoin the operation of the airport in which Edwin Rensmeyer, individually, was the sole defendant named. Plaintiff's bills were all addressed to Rensmeyer. The first, dated July 28, 1972, eventually produced a $500 check in partial payment, drawn by Rens-

meyer on an account in the name of "Western Aviation Service and Equipment Co." From other exhibits we infer that this was a trade name employed by Sibert Enterprises, Inc.

It is the appellants' theory that in engaging plaintiff's services Rensmeyer acted *only* as the agent of Sibert, the corporate airport operator, and not on behalf of *either* himself *or* PBX. (Their position as to the role of Maxine Rensmeyer is not clear, and since she has not appealed from the judgment against her we shall not concern ourselves with it.) The trial court, in its findings of fact, took a contrary view:

"1. That the defendants Premium Broker's'Exchange, Sibert Enterprises, Inc. and Maxine Rensmeyer acting through their agent Edwin A. Rensmeyer contracted for services with the plaintiff and plaintiff has performed services requiring 97.1 hours and the value of those services is $3,706.60, including advancements in the sum of $50.00 to the City of Lenexa and $2.40 for Xerox copies. Furthermore, that $500.00 has been paid on that account and there is now due and owing $3,206.60 to the plaintiff.

"2. The Court further finds that Edwin A. Rensmeyer, at the time in question herein, was the vice-president and treasurer of Premium Broker's Exchange, Inc. and a director and that he was the President and director of Sibert Enterprises, Inc.

"3. The Court further finds that at all of the above times the defendant Edwin A. Rensmeyer was acting as an officer and agent of the defendants Premium Broker's Exchange, Inc. and Sibert Enterprises, Inc. and Maxine Rensmeyer, and in that capacity contracted to employ the plaintiff and that said contract was within the scope of his authority and reasonably incidental to his authority even though not expressly authorized in writing by said corporations and that the defendant Maxine Rensmeyer and defendants Premium Broker's Exchange, Inc. and Sibert Enterprises, Inc. accepted the fruits of the legal services of the plaintiff.

"4. Accordingly, the plaintiff is granted a personal judgment against the defendants Premium Broker's Exchange, Inc., Edwin A. Rensmeyer, Maxine Rensmeyer and Sibert Enterprises, Inc., and each of them in the sum of $3,206.60 plus the costs of this action."

The appeal of Edwin Rensmeyer can be disposed of rather easily. His contention is that under the trial court's findings he was acting *only* as the agent of the other defendants when he hired the plaintiff. Hence, he argues, as an agent for disclosed principals he cannot be held personally liable on the contract. (*Cf., State, ex rel., v. Triplett,* 213 Kan. 381, 384, 517 P. 2d 136, and authorities cited.) The argument overlooks the fact that by rendering judgment against Rensmeyer personally the trial court impliedly found that he was also acting on his own behalf. Although Rensmeyer claimed to have told plaintiff he was acting only on behalf of

Sibert, plaintiff had no recollection of any such conversation and proceeded throughout his representation as if the Rensmeyers and the two corporations were one entity. Plaintiff testified:

"A. The only thing I have in my file is rough notes. I have both corporate names written down and outside of that, none of my functions as I recall involved either stating that I was representing either corporation or Mr. Rensmeyer; from there on through we just used Mr. Rensmeyer's name, knowing at the same time that he was going to involve both of these corporations in the operating of this some way."

The trial court's express findings, to be sure, were devoted to the question of agency—presumably because that was the real issue in the litigation. The evidence, however, clearly disclosed that Rensmeyer hired plaintiff and as an individual was the primary beneficiary of plaintiff's efforts. (No effort was made by any of the parties to break down plaintiff's bill; it was assumed by all that the services rendered were an integrated package.) The title work, for example, was for the Rensmeyers individually, and the neighbors' lawsuit was against Edwin Rensmeyer individually. He was the client in name and in fact, and the trial court was fully justified in finding that he was personally obligated to pay the fees of his attorney.

The evidence as to PBX is not quite clear, but we think it sufficient to support the trial court's finding of agency when viewed, as an appellate court must view it, in the light most favorable to the prevailing party. See, *Highland Lumber Co., Inc. v. Knudson,* 219 Kan. 366, 548 P. 2d 719.

The trial court, it will be noted, found that Rensmeyer hired plaintiff as the actual agent of PBX, even though he was "not expressly authorized in writing" to hire counsel. We are dealing, therefore, with an "implied" agency, *i. e.,* one that may be inferred from the dealings between the principal (PBX) and the agent (Rensmeyer). We are not dealing with an "ostensible" agency which depends on the principal's conduct toward third parties and rests on a theory of estoppel. For a recent discussion of the distinction see *Brown v. Wichita State University,* 217 Kan. 279, 286-88, 540 P. 2d 66.

In *Greep v. Bruns,* 160 Kan. 48, 159 P. 2d 803, we quoted the following as being in accord with our decisions on the subject of implied agency:

"The relation of agency need not depend upon express appointment and acceptance thereof, but may be, and frequently is, implied from the words and conduct of the parties and the circumstances of the particular case. If, from

the facts and circumstances of the particular case, it appears that there was at least an implied intention to create it, the relation may be held to exist, notwithstanding a denial by the alleged principal, and whether or not the parties understood it to be an agency." (p. 54.)

In the syllabus the rule was formulated in this way:

"The authority of an actual agent may be either express or implied. It is express if the one sought to be charged has delegated authority to the agent by words which expressly and directly authorize him to do a delegable act. It is implied if from statements of the parties, their conduct and other relevant circumstances it appears the intent of the parties was to create a relationship permitting the assumption of authority by an agent which when exercised by him would normally and naturally lead others to believe in and rely on his acts as those of the principal." (Syl. 4.)

We look, then, to the relationship between Edwin Rensmeyer and PBX, and particularly the other two members of the board of directors of PBX, his wife and sister-in-law. We find, as noted above, that he served as vice-president, treasurer and director. Mrs. Rensmeyer, the president of PBX, accompanied her husband and plaintiff to assorted hearings. She testified that her husband acted "in an advisory capacity." When, as an advisor, he suggested that what was originally an insurance premium financing company become an aircraft leasing company, his suggestion was adopted. As to her husband's specific role, Mrs. Rensmeyer testified: "As vice president, Mr. Rensmeyer was active for Premium Broker's Exchange; he is a certified public accountant and would be the logical one." The fair implication of this testimony is that Edwin Rensmeyer was the executive officer charged with carrying on the day-to-day activities of PBX.

This was virtually conceded by Rensmeyer himself in this exchange when he was on the witness stand:

"Q. Well, you conducted business on behalf of Premium Broker's Exchange, did you not? In carrying out the administrative functions?

"A. Well, I suppose you could assume that, yes. You could infer or imply that something I did was carrying out a business, yes. Also with their approval."

When taken together we think these circumstances are sufficient to support the trial court's finding that Rensmeyer had implied authority to retain counsel for PBX.

The judgment is affirmed as to both appellants.

APPROVED BY THE COURT.

FROMME, J., not participating.