**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

ALMA ROSE ROJO,

      Plaintiff-Counter-
      Defendant-Appellant,

    v.

IBP, INC.,

      Defendant-Counter-
      Claimant-Appellee.

No. 03-3300
(D.C. No. 02-CV-4112-JAR)
(District of Kansas)

**ORDER AND JUDGMENT**[*]

Before **EBEL** and **PORFILIO**, Circuit Judges and **HERRERA**, District Judge.[**]

Invoking diversity jurisdiction, Alma Rose Rojo instituted this action under

Kansas law for wrongful discharge in retaliation for her filing a worker's

compensation claim. Her former employer, IBP, Inc., moved for summary

judgment contending Ms. Rojo's action was barred by a prior settlement

---

[*]    This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**]    The Honorable Judith C. Herrera, United States District Judge for the District of New Mexico, sitting by designation.

agreement. IBP argued that during the pendency of her worker's compensation proceeding, Ms. Rojo agreed to compromise both her worker's compensation claim and her wrongful discharge claim in one settlement document. That settlement, it alleged, specifically included "all employment-related claims" filed under both federal and state law. The district court agreed, granting the motion for summary judgment on the ground that despite Ms. Rojo's denial of any intent to settle the discharge claim, her attorney was clothed with apparent authority to settle all claims against IBP arising from her accidental injury. In this appeal, Ms. Rojo contends the court erred because her intent to settle the wrongful discharge claim was a material disputed fact; therefore, the district court should not have granted summary judgement. We agree.

Because the parties are fully versed in the facts underlying Ms. Rojo's work-related injury, we confine our review to the material facts before the district court in the summary judgment record. These facts were deemed by the court to be "stipulated, uncontroverted or viewed in the light most favorable to plaintiff's case." The hearing on the summary judgment motion was held in a telephoned conference at the conclusion of which the court made its findings. In particular, the court found Ms. Rojo retained Christoher A. Randall "to file and pursue a workmen's compensation claim against IBP . . . [and he] was not retained to represent her on any other claims against IBP." In that capacity, Mr. Randall was

offered $1,816.94 to settle, but he refused. Mr. Randal then made a counteroffer to settle for $7,000, but that was rejected by IBP. The attorneys ultimately settled on the sum of $6,816.94.[1]

On December 5, 2001, Ms. Rojo accepted the compromise, and, on the following day, IBP counsel faxed a "settlement sheet" to Mr. Randall and Special Administrative Law Judge James Roth of the Division of Workers' Compensation of the State of Kansas. The district court found Mr. Randall neither showed IBP's settlement sheet to Ms. Rojo nor did he register any objection to its terms during the week before the settlement hearing before Judge Roth. The settlement sheet stated:

Compromise:

$6,816.94 on a strict compromise of the following issues:

Respondent proposes to pay, in addition to all medical and compensation previously provided, the lump sum of 6,816.94 in exchange for Claimant's full and complete compromise and settlement of any and all workers compensation claims arising out of Claimant's employment at IBP, Inc., including, but not limited to, future medical, right to review and modification and vocational rehabilitation. In addition, Claimant waives, compromises, and settles any and all employment-related claims against Respondent, including, but not limited to, wrongful discharge, retaliatory

---

[1] The record of the hearing indicates the $1,816.94 offer was based on a 9% impairment rating by IBP's medical examiner. IBP offered an additional $5,000, which was initially rejected. Just before an independent evaluation of her injury was scheduled, Ms. Rojo accepted the offer. The hearing transcript states: "Plaintiff rejected IBP's offer of $1,816.94 $5,000." [sic]

discharge, discrimination, grievance proceedings, and any claim under federal law . . . . Claimant further waives, compromises, and settles any claim against Respondent under state law, including, but not limited to, the Kansas Wage Payment Law, Kansas Act Against Discrimination, and the Kansas Age Discrimination in Employment Act.

As with the hearing on the motion for summary judgment, the worker's compensation settlement hearing before Judge Roth was also conducted by telephone. Although Ms. Rojo's counsel, Mr. Randall, was present before Judge Roth, his client was not. She was in the office of IBP's counsel, Mr. Wendel Wurst, in Garden City, Kansas.

During the course of the conference call, Judge Roth described the proposed settlement as a lump sum "intended to resolve all issues" and act as a full and final release. The district court found Judge Roth asked both attorneys whether "the parties agree to the facts on the worksheet" and whether it could be incorporated into the record.[2] They agreed to do so.

When asked if Mr. Randall explained "all the rights you have to give up if you accept this settlement," Ms. Rojo answered, "no." Judge Roth then explained Ms. Rojo had a right to turn down the settlement, meaning that a judge would hear all of the evidence of her claim and possibly award more money or less money, "[b]ut he would keep open all benefits under the Worker Compensation

---

[2] Judge Roth mentioned the settlement sheet only once during the hearing and then referred to it as a "work sheet."

Act." Ms. Rojo asked, "What do you mean keep open the medical?" Judge Roth explained that meant Ms. Rojo could keep open her right to get the order changed and increased in the future by convincing the court her condition had worsened. Ms. Rojo stated she understood.

Lastly, the district court found the "other terms of the settlement sheet were not referenced by Judge Roth or discussed by plaintiff or any counsel during the hearing." Nonetheless, the district court concluded Ms. Rojo agreed to these statements, and Judge Roth approved the settlement, telling her "it will act as a redemption [sic] of this order and the respondent will be released and discharged from any further liability." Mr. Wurst then tendered the check to Ms. Rojo, who stated on the record she accepted it as full and final payment.

Left unstated by the district court in its findings but, equally uncontested, are the facts that the settlement agreement was oral, and no settlement document was signed by either counsel or Ms. Rojo. Similarly uncontested is that Mr. Randall neither previously showed nor explained the settlement sheet to Ms. Rojo, which, as previously indicated, was referred to once in the hearing as "the worksheet." Finally, it is uncontested neither the lawyers nor Judge Roth mentioned to Ms. Rojo, in either specific or general terms, the inclusion in the settlement agreement of the waiver of "all employee-related claims." Thus, there is nothing in the record from which it could be inferred that Ms. Rojo was aware

of the inclusion of those terms, their meaning, or their significance. Likewise, there is no evidentiary support for an inference Mr. Randall believed he was to discuss those terms with Mr. Wurst. Although the district court noted Judge Roth's statement the settlement sheet was "incorporated into the record" at the hearing, it was neither read nor were its terms referred to at any time. Asked if she understood Judge Roth's explanation "this $6,816.94 is the only money you are ever going to get from workmen's compensation because of this workers' compensation injury," Ms. Rojo replied, "Yes, but he never told me that I was going to lose medical like if something else happens in the future." Judge Roth explained if she settled, "medical benefits stop today," but medical expenses incurred before the settlement would be paid. With that assurance, Ms. Roth stated she realized her acceptance of the settlement would close the case forever, and "it can never be reopened or reviewed or changed again."

With these facts, the district court considered whether the agreement between counsel is enforceable and acts as a defense to a subsequent civil action. Recognizing that Kansas contract law governed that question, the court concluded the oral agreement incorporating the settlement sheet was approved in an open hearing before Judge Roth and both counsel. That Ms. Rojo did not know the settlement agreement released all claims did not alter this conclusion. "Plaintiff is bound by her attorney's conduct in accepting the terms of the settlement sheet."

-6-

According to the court, that conduct included Mr. Randall's not objecting to the settlement sheet during the seven days after its receipt and his consenting to its terms at the hearing before Judge Roth. Although Mr. Randall stated in an affidavit before the district court he did not intend to release all employment claims, the court noted, "but he did agree to such terms in open court." The court also found it notable that the settlement occurred almost 18 months after Ms. Rojo was terminated. "Surely plaintiff had knowledge or suspicion at the time of the settlement that there were facts supporting a wrongful or retaliatory discharge claim."[3] Additionally, the court stated, "counsel's acquiescence to the release of those claims was spelled out in the settlement sheet and was a knowing and intentional acquiescence." Thus, "counsel had actual authority to negotiate and settle her workmen's comp claim. And plaintiff's presence at the hearing in which counsel consented to the oral agreement means that counsel had actual authority to do that as well." Further, the court concluded, even if counsel did not have actual authority to go beyond the worker's compensation claim to settle all employment-related claims, counsel had apparent authority to do so, Ms. Rojo's *silence* operating to "cloak counsel with her authority." Thus, IBP counsel reasonably believed the settlement released all claims, the court concluded.

---

[3]   Ms. Rojo was injured on March 23, 2000, and terminated on July 14, 2000. During the interval between her injury and the settlement of her worker's compensation claim on December 13, 2001, Ms. Rojo gave birth to twins.

When applying the de novo standard of review to the district court's grant of summary judgment, we "view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Elliott Indus. Ltd. P'ship v. BP America*, 407 F.3d 1091, 1107 (10th Cir. 2005), citing *Martin v. Kansas*, 190 F.3d 1120, 1129 (10th Cir. 1999). Furthermore, in that review, we apply the same legal standard used by the district court. *Pastran v. K-Mart Corp.*, 210 F.3d 1201, 1204 (10th Cir. 2000), citing *Jones v. Denver Post Corp.*, 203 F.3d 748, 751 (10th Cir. 2000).

The issue, then, turns on whether the record includes uncontroverted facts Ms. Rojo's conduct during the settlement hearing cloaked her counsel with apparent authority to settle, not only her workers' compensation claim, but also all other employment-related claims, thus, barring this action. We look to Kansas law for the answer.

In Kansas, "[w]hat constitutes agency, and whether there is any competent evidence reasonably tending to prove such a relationship is a question of law." *Brown v. Wichita State Univ.,* 540 P.2d 66, 74 (Kan. 1975) (citations omitted). That law begins with the proposition that the mere employment of an attorney confers no authority to settle the client's claim. *Hayes v. Eagle-Picher Indus., Inc.*, 513 F. 2d 892, 893 (10th Cir. 1975); *Miotk v. Rudy*, 605 P.2d 587, 591 (Kan. Ct. App. 1980). While a client may be bound by her attorney's appearance,

admissions, and other actions on her behalf, "[t]hat rule is limited, however, to control over procedural matters incident to litigation." *Reimer v. Davis*, 580 P.2d 81, 85 (Kan. 1978). Unless ceded, the client controls the subject matter of the litigation. *Id.* (citation omitted). "An attorney has no authority to compromise or settle his client's claim without his client's approval." *Id.* (citations omitted).

Kansas law "recognizes two distinct types of agency - one actual, and the other, ostensible or apparent." *Brown,* 540 P.2d at 74 (citations omitted). The authority of an actual agent may be express "if the principal has delegated authority to the agent by words which expressly authorize the agent to do a delegable act." *Mohr v. State Bank of Stanley*, 734 P.2d 1071, 1075 (Kan. 1987), quoting *Gardner v. Rensmeyer*, 557 P.2d 1258, 1261 (Kan. 1976). An agency is implied "if it appears from the statements and conduct of the parties and other relevant circumstances that the intention was to clothe the agent with such an appearance of authority that when the agency was exercised it would normally and naturally lead others to rely on the person's acts as being authorized by the principal." *Id.* On the question of implied agency, "it is the manifestation of the alleged principal and agent as between themselves that is decisive, and not the appearance to a third party or what the third party should have known. An agency will not be inferred because a third person assumed that it existed." *Id.*, quoting *Brown*, 540 P.2d at 75, quoting 2A C.J.S., *Agency* § 52. (emphasis added).

-9-

However, the liability of the principal for the acts and contracts of his agent is not limited to such acts and contracts of the agent as are expressly authorized, necessarily implied from express authority, or otherwise actually conferred by implication from the acts and conduct of the principal. All such acts and contracts of the agent as are within the apparent scope of the authority conferred on him, although no actual authority to do such acts or to make such contracts has been conferred, are also binding upon the principal. Apparent authority . . . is that which, though not actually granted, the principal *knowingly* permits the agent to exercise *or which [s]he holds him out* as possessing. Accordingly, an apparent agent is one who, with or without authority, reasonably appears to third persons to be authorized to act as the agent of another.

*Miotk*, 605 P.2d at 591 (citations omitted) (emphasis added). "Apparent agency is based on intentional actions or *words of the principal toward third parties* which reasonably induce or permit third parties to believe that an agency relationship exists." *Mohr,* 734 P.2d at 1075 (emphasis added).

The record confirms Mr. Randall's actual authority to negotiate a settlement of the worker's compensation claim. It is less clear whether that express agency presumes Ms. Rojo's knowingly permitting that settlement to embrace all of her employment-related claims. *Miotk*, 605 P.2d at 591.

We must then look at Ms. Rojo's "intentional actions or words" toward IBP counsel Wurst which could reasonably permit him to believe Mr. Randall had apparent authority to settle both Ms. Rojo's worker's compensation claim and all employment-related claims. Those facts, taken in the light most favorable to Ms. Rojo, are ambiguous at best, and absent at worst. Instead, filling the interstice

-10-

between the uncontroverted factual finding Ms. Rojo hired her attorney solely "to file and pursue a workmen's compensation claim against IBP. . . [and] . . . [not] to represent her on any other claims against IBP," and the court's conclusion Ms. Rojo's "silence [when told that this settlement was settlement of all future liability] cloaked counsel with her authority" are material facts which defy summary judgment and should be submitted to a jury.

On the present state of the record, it is evident Ms. Rojo never saw the settlement sheet containing the additional terms and never discussed those terms with her attorney. During the worker's compensation hearing, Ms. Rojo focused her attention solely on the payment of medical bills generated by her injury. When Judge Roth asked Ms. Rojo if counsel explained "the rights you have to give up if you accept this settlement, Ms. Rojo responded," no," prompting Judge Roth to state, "I'll take it one at a time," and to explain the *medical benefits* she would relinquish by settling the worker's compensation claim.

Addressing solely "the medical," Judge Roth then asked, "Do you need to talk to your attorney in private?" Ms. Rojo responded, "no." That statement taken in the light most favorable to Ms. Rojo can be understood to communicate Ms. Rojo did not need to confer with Mr. Randall because he did what she understood she wanted him to do, that is, settle her worker's compensation claim and assure payment of all of her medical expenses up to the time of that

-11-

settlement, as confirmed by Judge Roth. That response, circumscribed by *all* of the dialogue of the telephone conference hearing produces the alternative inference that her answer "no" meant it never even occurred to Ms. Rojo she needed to talk to Mr. Randall because the terms of the global settlement were neither presented nor explained before or during the hearing. Under either reading, her response falls short of the "intentional actions or words" that the principal must convey toward a third party to induce reasonable reliance. Moreover, her denial of her intent to settle any claim other than her worker's compensation claim directly controverts any inference, especially if taken from her silence, that she did. While that issue could be resolved at trial, as a matter of law her denial controverts any inference Mr. Wurst's reliance was reasonable.

We therefore **REVERSE** the court's order granting summary judgment and **REMAND** the action for further proceedings.

Entered for the Court

John C. Porfilio
Senior Circuit Judge

-12-

03-3300, Rojo v. IBP, Inc.
**EBEL,** Circuit Judge, dissenting

I respectfully dissent from the Order and Judgment in this case. It seems to me that the district court was correct in granting summary judgment to IBP.

Looking at the facts as they appeared to Wurst, the following is undisputed: Rojo authorized her attorney to negotiate a settlement with Wurst. Rojo appeared, by telephone, at the settlement hearing and acknowledged understanding and hearing the entire proceeding. Rojo did not question her attorney's agreement to the terms of the settlement sheet or his authorization for the sheet to be included in the court record as part of the settlement. At the hearing, Rojo heard the judge refer to: a "lump sum [settlement], that's intended to resolve all issues and act as a full and final release;" to a "lump sum . . . that is to end all issues of liability;" and to the settlement payment "as a redemption of [the settlement] order and [the defendant's] will be released and discharged from any further liability." Rojo declined, for whatever subjective reasons, to confer privately with her attorney. And, when the judge asked Rojo whether she accepted the settlement, which would close the case forever, Rojo responded to "[g]o ahead and do it" and "[y]eah, go ahead and close it." Finally, when Wurst asked if Rojo wold accepted the settlement check "in full and final settlement of all claims that [she] had against IBP arising out of the accidental injury of March 23 of the year 2000," Rojo endorsed the check. In my judgment, these facts demonstrate as a matter of

law that Rojo cloaked her attorney with apparent authority to bind her to the settlement with the additional terms and that the district court summary judgment in this case was therefore proper. [1]

---

[1]The majority references the fact that Rojo never saw the settlement sheet, but that does not seem relevant to me because there is no evidence in this record to suggest either that Wurst knew or did not know that fact. We need to examine the facts from Wurst's point of view for purposes of our apparent authority analysis. Also, I respectfully disagree with the majority's conclusion that "[Rojo's] denial of her intent to settle any claim other than her worker's compensation claim directly controverts any inference . . . that she did." Rojo's denial of an intent to settle was not made until long after the settlement agreement was solemnized, and therefore it seems irrelevant to our apparent authority analysis, which speaks as of the time the settlement agreement was entered. In addition, Rojo's subjective intent is not relevant to whether her actions and words caused Wurst reasonably to believe that Rojo's attorney had apparent authority to settle all her employment-related claims.